**Bradley MURRAY, Plaintiff,**

**v.**

**Helen SEVIER, Defendant.**

**Civ. A. No. 92–1073–MLB.**

United States District Court,
D. Kansas.

Jan. 27, 1993.

Randall E. Fisher, Michaud Hutton & Bradshaw, Wichita, KS, for plaintiff.

William Robert Martin, Martin, Pringle, Oliver, Wallace & Swartz and Dennis M. Feeney, Morris, Laing, Evans, Brock & Kennedy, Chtd., Wichita, KS, for defendant.

## MEMORANDUM AND ORDER OF DISMISSAL

BELOT, District Judge.

Before the court are the following:

1. Motion of defendants Helen Sevier, Bass Inc., Jemison Investment, Karl Dabbs and John and Mary Does 1–X to dismiss the second amended complaint or in the alternative to transfer (Doc. 26).

2. Motion of defendant Ray W. Scott, Jr. to dismiss the second amended complaint or to transfer (Doc. 28).

3. Motion of plaintiff Bradley Murray for leave to file a third amended complaint and to add Larry Neff as a plaintiff (Doc. 85).

4. Motion by plaintiff Bradley Murray to certify class action (Doc. 84).

In addition, the parties have filed extensive memoranda supporting and opposing the motions (Docs. 29, 35, 36, 54, 55, 81, 100, 101, 103, 104, 105 and 110).

This relatively young case already has a checkered history which began with a deliberate effort to circumvent this court's random selection process and secure a trial before Chief Judge Kelly. Counsel filed six separate actions on February 14, 1992. The actions were as follows:

| Case Number | Plaintiff | Defendant | Date Filed | Date Dismissed | Judge Assigned |
|---|---|---|---|---|---|
| 92–1068 | Larry Neff | Ray Scott | 2–14–92 | 2–18–92 | Belot |
| 92–1069 | Larry Neff | Helen Sevier | 2–14–92 | 2–18–92 | Belot |
| 92–1070 | Larry Neff | B.A.S.S. Inc. | 2–14–92 | 2–18–92 | Theis |
| 92–1071 | Bradley Murray | Ray Scott | 2–14–92 | 2–18–92 | Theis |
| 92–1072 | Bradley Murray | B.A.S.S. Inc. | 2–14–92 | 2–18–92 | Belot |
| 92–1073 | Bradley Murray | Helen Sevier | 2–14–92 | | Kelly |

The allegations made by Neff against Ray Scott in case number 92–1068 and the allegations made by Murray against Scott in case number 92–1071, for all intents and purposes, were identical. The same holds true for the allegations in case numbers 92–1069 and 92–1073 and 92–1070 and 92–1072. When counsel determined that case number 92–1073 had been assigned to Chief Judge Kelly, they dismissed all the other cases pursuant to Fed.R.Civ.P. 41(a)(1).

Almost immediately, counsel filed a first amended complaint (Doc. 4) purporting to list both Murray and Neff as plaintiffs. Defendants listed in the first amended complaint were Scott, B.A.S.S., Inc., Sevier, Jemison Investment Company, Inc., Karl Dabbs, James Davis and others. When Chief Judge Kelly discovered what counsel had done, he issued a memorandum and order (Doc. 13) dismissing the first amended complaint, without prejudice. In his order, Chief Judge Kelly stated:

> The court will retain jurisdiction of the cause of action stated in the initial complaint until such time as a conference with litigants takes place. At that time, a determination will be made as to whether the case should be reassigned to the first judge selected when all of the cases were filed or, alternatively, consolidation of all cases for discovery before this court, or another court.

The conference was never held. Instead, by order dated March 17, 1992 (Doc. 16), Chief Judge Kelly transferred case number 92–1073 to the undersigned.

Between the filing of the original complaint and the filing of the first amended complaint, counsel entered their appearance for Ray W. Scott, Jr. (Doc. 6). After the filing of the second amended complaint (Doc. 17), counsel entered their appearance for Helen Sevier (the only defendant named in the original complaint) as well as Karl Dabbs, James Davis, Jemison Investment Inc. and other defendants named in both the first amended and second amended complaints (Doc. 20). Contemporaneous with their entries of appearance, counsel filed motions to dismiss or, in the alternative, to transfer the case to the Middle District of Alabama (Docs. 26 and 28). Before these motions could be ruled upon, plaintiff Bradley Murray simultaneously moved for leave to file a third amended complaint and to add Larry Neff as a plaintiff (Doc. 85) and to certify the third amended complaint as a class action (Doc. 84).[1]

### I. *Motions to Dismiss Second Amended Complaint*

Rule 15(a), Fed.R.Civ.P., provides, in pertinent part:

> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served.... Otherwise the party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

■ It is undisputed that leave to file the second amended complaint was not sought. Counsel make numerous, lengthy arguments why it was not necessary to do so. The court considers all the arguments to be without merit and declines to burden the record with extended discussion reject-

---

1. These motions are by no means the only activity in this case. The docket sheet reveals more than 100 additional docket entries since the filing of docket 26. Included are many motions. Because of this court's ultimate decision dismissing all claims, it will not be necessary for the court to rule on these motions.

ing them. In any event, by filing a motion for leave to file a third amended complaint, the issues surrounding the second complaint have become moot.

Accordingly, the second amended complaint (Doc. 17) is dismissed.

## II. *Motion for Leave to File a Third Amended Complaint*

The third amended complaint is styled Bradley Murray and Larry Neff, plaintiffs, vs. Ray W. Scott, Jr., Bass Inc., Helen Sevier, Jemison Investment Company, Inc., Karl L. Dabbs and James D. Davis, defendants. It purports to be a class action. The allegations of the third amended complaint appear to be substantially similar to those set forth in the second amended complaint. Defendants[2] have requested the court to consider their objections to the second amended complaint in connection with the third amended complaint and the court finds this request to be appropriate.

### A. *Dismissal Pursuant to Federal Rules of Civil Procedure 41(a)(1)*

■ Defendants contend that the third amended complaint should be dismissed under the "two-dismissal" rule of Fed. R.Civ.P. 41(a)(1) which provides, in pertinent part:

Subject to the provisions of Rule 23(e), of Rule 66, and of any statute of the United States, an action may be dismissed by the plaintiff without order of the court (i) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs, or (ii) by filing a stipulation of dismissal signed by all parties who have appeared in the action. Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, *except that a notice of dismissal operate as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court of the United States or in*

*any state an action based on or including the same claim.* (emphasis supplied)

Defendants' claim, in substance, is that Murray's and Neff's shenanigans in filing and dismissing their cases against Scott, B.A.S.S., Inc. and Sevier mandate application of the "two-dismissal" rule to the third amended complaint. They acknowledge that neither Murray nor Neff twice dismissed against any of the defendants (indeed, neither Murray nor Neff initially sued Jemison Investment Company, Inc., Karl L. Dabbs, or James D. Davis). However, the defendants contend that Rule 41(a)(1) nevertheless applies because Murray and Neff, as plaintiffs, and all of the defendants may be considered to be privies, thereby providing the two dismissals necessary to trigger the operation of Rule 41(a)(1).

All of the defendants rely on two cases: *Lake at Las Vegas Investor's Group, Inc. v. Pacific Malibu Development Corp.*, 933 F.2d 724, 728 (9th Cir.1991), *cert. denied* — U.S. ——, 112 S.Ct. 1295, 117 L.Ed.2d 518 (1992) and *Manning v. South Carolina Department of Highway and Pub. Transportation*, 914 F.2d 44, 48 (4th Cir.1990). In *Lake at Las Vegas*, plaintiff twice sued and dismissed a wholly owned subsidiary and partnership in which the subsidiary was also the general partner. The district court dismissed citing the "two-dismissal" rule. The dismissal was upheld on appeal. The court of appeals declined to find the existence of privity between the dismissed defendants or to define the precise parameters of the applicable test for dismissal under Rule 41(a)(1). It merely found that the relationship between defendants sufficient to render them "substantially the same" for purposes of the rule.

In *Manning*, plaintiff sued the South Carolina Department of Highway and Public Safety and certain "John Doe" defen-

---

**2.** Technically, the individuals and corporations named in the third amended complaint are only proposed defendants. The only exception may be Sevier, who was named in the original complaint. However, no summons was issued and Sevier was never served with that pleading.

However, for convenience, all of the individuals and corporations named as defendants will be referred to as defendants. For the same reasons, the court will refer to both Murray and Neff as plaintiffs, even though only Murray technically is a plaintiff.

dants. Plaintiff voluntarily dismissed this suit and then filed another action naming, among others, the highway department and Victor Evans, a South Carolina deputy attorney general. Plaintiff then voluntarily dismissed Evans. Then plaintiff filed a third suit naming Evans, and others. The district court dismissed Evans on the basis of the "two-dismissal" rule.

On appeal, the plaintiff urged that his dismissal of Evans in the second case should not count because Evans was not named as a defendant in the first case. The court of appeals disagreed, noting:

Manning's argument ignores the principle that *res judicata* extends not only to named parties to an action but also to their privies. *Nash County Bd.* [*v. Biltmore Co.*], 640 F.2d [484] at 493; [ (4th Cir.1981) ]; *Bagwell v. Hinton*, 205 S.C. 377, 32 S.E.2d 147, 156 (1944). While privity is an elusive concept, *see generally Nash County Bd.*, 640 F.2d at 493–94.

[t]he term "privy", when applied to a judgment or decree, means one so identified in interest with another that he represents the same legal right. One in privity is one whose legal interests were litigated in the former proceeding.... "Privity" as used in the context or res judicata or collateral estoppel, does not embrace relationships between persons or entities, but rather it deals with a person's relationship to the subject matter of the litigation.

*Richburg v. Baughman*, 290 S.C. 431, 351 S.E.2d 164, 166 (1986). Here, Manning and his lawyer testified that Evans was intended to be the defendant Doe or Roe named in Manning's first action. Given these statements, Manning can hardly assert that Evans' legal rights were not implicated in the initial suit. The district court did not err in considering Manning's dismissal of the action filed in January 1982 as the first of two dismissals of Evans as a defendant.

The court is not persuaded that these cases justify application of the "two-dismissal" rule in this case. While it is arguable that Murray's and Neff's relationship to the subject matter of this case is similar, or even identical, neither *Lake at Las Vegas* nor *Manning* stand for the proposition that identical interests of *plaintiffs* trigger the application of Rule 41(a)(1). Furthermore, it is not clear that the interests of the defendants are so interrelated that each represents the same legal right.

The court finds pertinent the following comment from *Poloron Products, Inc. v. Lybrand Ross Brothers and Montgomery*, 534 F.2d 1012, 1027 (2nd Cir.1976):

It seems to be universally accepted that the primary purpose of the "two dismissal" rule is to prevent an unreasonable use of the plaintiff's unilateral right to dismiss an action prior to the filing of defendant's responsive pleading (citation omitted)

\* \* \* \* \* \*

The "two dismissal" rule is an exception to the general principle, contained in Rule 41(a)(1) and honored in equity prior to the adoption of the Federal Rules, that a voluntary dismissal of an action does not bar a new suit based upon the same claim. 5 J. Moore, *supra*, ¶ 41.04, at 1045. Where the purpose behind the "two dismissal" exception would not appear to be served by its literal application, and where that application's effect would be to close the courthouse doors to an otherwise proper litigant, a court should be most careful not to construe or apply the exception too broadly. "[T]he entire purpose of the rules was to strike from judges and litigants useless shackles of procedure to the end that a fair trial of the essential questions could be had." *Glaspell v. Davis*, 2 F.R.D. 301, 304 (D.Or.1942). "The basic purpose of the Federal Rules is to administer justice through fair trials not through summary dismissals as necessary as they may be on occasion." *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 373, 86 S.Ct. 845, 851, 15 L.Ed.2d 807, 814 (1966).

Accordingly, the court finds that application of Rule 41(a)(1) to the facts of this case would be tenuous, at best. Therefore, defendants' motions to dismiss pursuant to Rule 41(a)(1) are denied.

B. *Dismissal Because the Facts and Parties Sought to Be Added Were Known by Plaintiff At the Time The Original Complaint Was Filed*

■ Defendants assert that plaintiffs should not be granted leave to file the third amended complaint because the facts and parties sought to be added were known by them at the time the original complaint was filed.

Because the third amended complaint involves the addition of claims and of parties, both Rules 15 and 20, Fed.R.Civ.P., should be considered. However, none of the defendants seriously attempt to invoke either of these rules to bar the third amended complaint. Rather, the defendants insist that the amendment should not be permitted because the facts and parties sought to be added were known by the plaintiffs at the time the original complaint was filed.

Defendants rely on four cases: *State Distributors, Inc. v. Glenmore Distilleries Company,* 738 F.2d 405, 416 (10th Cir. 1984), *Koch v. Koch Industries,* 127 F.R.D. 206, 211 (D.Kan.1989), *Mullinax v. McNabb–Wadsworth Truck Co.,* 117 F.R.D. 694, 696 (N.D.Ga.1987) and *Ferrell v. Busbee,* 91 F.R.D. 225, 231 (N.D.Ga. 1981). While each of these cases, to one extent or another, states the general rule that leave to amend may be denied when a plaintiff had to know the facts upon which the amendment was based at the time the original complaint was filed, the cases are distinguishable upon their facts. In *Koch,* for example, plaintiffs sought to amend four years after the original complaint was filed. Judge Crow of this court, in a very comprehensive opinion, granted amendments which essentially arose out of the initial complaint but denied amendments to include RICO claims on the grounds of undue delay, bad faith and undue prejudice. In *Mullinax,* leave was denied because of undue delay in filing the motion to amend. The court noted that all of the facts supporting the amendment were known to the plaintiffs when the initial action was filed yet plaintiffs waited until after the close of discovery and after the defendant had filed a motion for summary judgment to move to amend. The court also noted that plaintiffs stated no reason for waiting so long to seek leave to amend. In *Ferrell,* the court denied the amendment finding that plaintiff failed to demonstrate that his motion was not a dilatory tactic and, in any event, that the amendment would be futile.

This court, of course, is bound to follow the dictates of the Tenth Circuit. In *State Distributors, Inc., supra,* the court stated:

However, it has been long established and this court has often reiterated that allowance of amendments is in the discretion of the district court and that, consequently, allowance of or refusal to permit amendment is not subject to appeal except for abuse of discretion. *United States Fidelity and Guaranty Company v. United States,* 389 F.2d 697 (10th Cir.1968). In determining whether to allow amendment of a complaint, the court typically considers several factors. These include whether the amendment will result in undue prejudice, whether the request was unduly and inexplicably delayed, was offered in good faith, or that the party had sufficient opportunity to state a claim and failed. E.g., *Local 472, etc. v. Georgia Power Company,* 684 F.2d 721 (11th Cir.1982). Where the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial. See *Svoboda v. Trane,* 495 F.Supp. 367 (E.D.Mo.1979), *aff'd* 655 F.2d 898 (8th Cir.1981).

Also amendments adding parties may involve consideration of Fed.R.Civ.P. 20, governing permissive joinder. E.g., *Martinez v. Safeway Stores, Inc.,* 66 F.R.D. 446 (N.D.Cal.1975) (where the court stated that it is implicit in Rule 15 that plaintiff may amend his complaint only to add matters that otherwise would have been proper to include in the original complaint). Consequently, this requires a determination by the district court of whether any right to relief asserted by plaintiffs against all defendants "in respect of or arising out of the same transaction, occurrence, or series of

transactions or occurrences and any operation of law or fact common to all will arise in the action." Fed.R.Civ.P. 20(a).

It is apparent from reading the allegations of the original complaint and comparing them with the allegations and timing of the first and second amended complaints that plaintiffs knew (or certainly could have known) of the facts upon which the proposed amendment is based but failed to include them in the original complaint. However, such a finding must be tempered with consideration of the undue prejudice and delay factors. The cases cited by defendants stand for the proposition that when an amendment is inexplicably delayed or where the defendant will be unduly prejudiced, discretion may be properly exercised to deny an amendment based upon facts which the plaintiff knew or should have known. In the absence of unexplained delay or undue prejudice, however, discretion favors the amendment. When, as in this case, defendants have not even alleged either of these factors, it would be inappropriate to deny the amendment merely because the plaintiffs knew of the facts at the time the original complaint was filed.

■ The real thrust of defendants' argument is that the allegations of the third amended complaint are not offered in good faith. The lack of good faith relied upon is plaintiffs' attempt to "judge shop." While the undersigned does not approve of judge shopping, he does not find that the practice, by itself, in this case, constitutes bad faith sufficient to deprive a plaintiff of access to a forum in which to assert his claims. Stated another way, it is apparent from the affidavits attached to the plead-

ings and from the explanation offered by plaintiffs' counsel that the idea of "judge shopping" originated with, and was carried out by, counsel, not by plaintiffs. While there are cases in which an otherwise innocent plaintiff may have to suffer because of the irresponsible and misguided decisions of his counsel, this is not one of them.[3]

With respect to joinder of additional defendants under Rule 20, the court initially notes that the defendants have not raised a Rule 20 objection. In the absence of such an objection, the court has no basis at this point to rule that the claims asserted against any or all defendants do not arise out of the same transaction, occurrence, or series of transactions or occurrences, or that no operation of law or fact common to all will arise in the action. Accordingly, defendants' motion to deny leave to file the third amended complaint based on facts known at the time the original complaint was filed is denied.

## C. *Dismissal for Lack of Personal Jurisdiction*

Each of the defendants asserts that this court lacks personal jurisdiction over the claims asserted against him, her or it. While the motions raise interesting, and in the cases of all proposed defendants except Scott and B.A.S.S., Inc., persuasive arguments, it is not necessary to decide the motions because of deficiencies in the third amended complaint as illuminated by the accompanying motion to certify a class action which lead to the ultimate dismissal of all claims.

---

**3.** Counsel state that they deliberately sought Chief Judge Kelly to preside over this case because they "believe that the interests of 518,700 B.A.S.S. members would be better served if the judge presiding over the case was familiar with whatever political pressure, intimidation, threats (or the like) these defendants are quite capable of exerting." This explanation is transparently disingenuous. While it might arguably be plausible when applied to the undersigned due to his short tenure on the bench, it certainly is not true of Senior Judge Theis. Surely counsel would not contend that Judge Theis, who presided over the *Silkwood* and Leavenworth Brothers cases, among others, would not be up

to handling whatever difficult issues, whether real, imagined or invented, might arise in this case. The *real* reason counsel wanted Chief Judge Kelly is because of their perceived notion that because Judge Kelly was thought of as a "plaintiff's lawyer" before he took the bench, he would somehow favor their side of the case. This belief is an affront to all of the members of this court and especially to Chief Judge Kelly because it suggests that Judge Kelly would disregard his oath and his duty to render justice impartially. This having been said, the court considers the issue of judge shopping fully argued by all sides. *It is now over.*

### III. *Plaintiff's Motion for Class Certification*

 Plaintiffs move pursuant to Fed. R.Civ.P. 23(c)(1) for certification of the following class: all persons who are members of the Bass Anglers Sportsman Society.[4] The threshold issue which must be answered is whether the claims in the third amended complaint purport to allege a direct action or a derivative action. To a large extent, the parties' memoranda on this issue are like two ships passing in the night; they really do not address it.

The logical starting place is the allegations of the third amended complaint. In pertinent part, the allegations are as follows:

1. Plaintiffs Murray and proposed plaintiff Neff (hereafter simply plaintiffs) bring this diversity action as members and legal representatives of the Bass Anglers Sportsman Society. B.A.S.S. is an unincorporated association with approximately 518,700 members nationwide. Approximately 7,575 B.A.S.S. members apparently reside in the state of Kansas (Para. 13).

2. Prior to and subsequent to the formation of the Society [alleged to be 1967], proposed defendant Scott repeatedly represented the Society's primary purpose to be the conservation of our nation's streams, lakes, rivers and other public waterways to enhance our nation's fisheries. Scott also represented to the public that the Society was formed to promote the sport of bass fishing with the particular promotion of youth fishing (Para. 14).

3. The defendants are guilty of fraud, breach of fiduciary duties and conver-

sion. On behalf of the members of the Society, plaintiffs seek an accounting and restitution; monetary damages; a declaration of title to and ownership of the Society's *Bassmaster Magazine* and other Society assets with the resultant imposition of a constructive trust; punitive damages; and injunctive relief (Para. 17).

4. Upon information and belief, the wrongful acts of the defendants have been going on since May 1969. They have caused damage to the Bass Anglers Sportsman Society in an amount exceeding $75,000,000. During this time, this money should have gone to further the purposes and goals for which the Society was originally formed. Diversion of this money occurred because of proposed defendants' fraudulent scheme (Para. 18).

5. Pursuant to K.S.A. 60–223b and Fed. R.Civ.P. 23(b)(1), plaintiffs file this class action as members and legal representatives of the Bass Anglers Sportsman Society, an unincorporated association. The legal and equitable relief which plaintiffs seek is for the Society itself, not for the pecuniary benefit of plaintiffs or any Society member personally (Para. 21).

6. The class members are so numerous that joinder of all 518,700 is impractical; all questions of law and fact are common to the class; the claims of the representative parties and other members of the class are joint and, hence, typical; and plaintiffs will fairly and adequately protect the interests of the Society and its members (Para. 22).

7. The questions of law common to the class include: (a) whether B.A.S.S. is an

---

4. Plaintiffs' motion (Doc. 84) was filed on August 25, 1992. Plaintiff's motion to file a third amended complaint was filed on the same day (Doc. 85). Defendants argue that because the third amended complaint could not be filed without leave of court, the plaintiffs' motion for class certification had to be applicable to the second amended complaint filed March 20, 1992 (Doc. 17) and that the motion for class certification therefore was not timely under local rule 209(b) which provides, in pertinent part, that "within 90 days after the filing of a complaint in a class action, unless the period is extended by court order, the plaintiff shall file a separate

motion for a determination under Fed.R.Civ.P. 23(c)(1), as to whether the case may be maintained as a class action." While the defendants are technically correct and while the court could decline to consider plaintiffs' motion as untimely, the court finds it would not be consistent with the just, speedy and inexpensive determination of this action to do so. Fed.R.Civ.P. 1. It is quite apparent from the third amended complaint that the plaintiffs intend to pursue a class action and would, in all probability, simply file another motion for class certification. It would elevate form over substance not to reach the class certification issue now.

unincorporated association; (b) whether B.A.S.S., Inc., is a lawful corporation; (c) whether proposed defendants owed any fiduciary duties to the members of B.A.S.S.; and (d) whether B.A.S.S. members jointly own *Bassmaster Magazine* and all other Society assets currently in the actual possession of B.A.S.S., Inc., or the other proposed defendants (Para. 23).

8. The questions of fact common to the class include: (a) whether the members of B.A.S.S. were defrauded; (b) whether the proposed defendants have converted assets and revenues belonging to the members of B.A.S.S.; (c) whether proposed defendants breached any fiduciary duties owed to B.A.S.S. members; and (d) the amount of damages suffered by B.A.S.S. members (Para. 24).

9. Plaintiffs will fairly and adequately protect the interests of the Society and its members. Plaintiffs claim they are zealous in their desire to ensure that the Society accomplish its original founding goals: (a) conservation of our nation's lakes, rivers, streams and waterways; (b) promotion of the sport of bass fishing; and (c) the promotion of youth fishing. Plaintiffs are also zealous in their desire to stop the defendants from looting the Society of its assets and revenues which have denied the Society its right to devote more than $75 million to accomplish the Society's founding goals. Finally, plaintiffs will fairly and adequately protect the interests of the Society and its members because: (a) they are represented by competent and adequate counsel and (b) they have adequate resources to prosecute this class action (Para. 25).

10. The tortious and fraudulent acts of proposed defendants occurred from May 16, 1969, to the present (Para. 26).

11. Plaintiff Bradley Murray became a life member of the Society on or about March 1982 (Para. 27).

12. Proposed plaintiff Larry Neff became a life member of the Society on or about March 1983 (Para. 28).

Rule 23, Fed.R.Civ.P., provides in pertinent part:

(a) *Prerequisites to a Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) *Class Actions Maintainable.* An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the

class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

(c) *Determination by Order Whether Class Action to Be Maintained; Notice; Judgment; Actions Conducted Partially as Class Actions.*

(1) As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits.

Rule 23.1, Fed.R.Civ.P., provides:·

*Derivative Actions by Shareholders*

In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege (1) that the plaintiff was a shareholder or member at the time of the transaction of which the plaintiff complains or that the plaintiff's share or membership thereafter devolved on the plaintiff by operation of law, and (2) that the action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have. The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort. The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association. The action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to share-holders or members in such manner as the court directs.

Rule 23.2, Fed.R.Civ.P., provides:

*Actions Relating to Unincorporated Associations*

An action brought by or against the members of an unincorporated association as a class by naming certain members as representative parties may be maintained only if it appears that the representative parties will fairly and adequately protect the interest of the association and its members. In the conduct of the action the court may make appropriate orders corresponding with those described in Rule 23(d), and the procedure for dismissal or compromise of the action shall correspond with that provided in Rule 23(e).

The parties' dispute over whether this is a class action or a derivative action overlooks the more fundamental issue which is whether the allegations of the third amended complaint purport to state a derivative action or a direct action. The distinction is explained in *Fletcher Cyc. Corp.* as follows:

*5.04 Derivative Actions*

Derivative actions are actions brought by shareholders or members on behalf of the corporation. The distinction between a derivative action and a direct action is that in a derivative action the right of action belongs to the corporation, not the shareholder-plaintiff. This fact makes it a more complicated form of action than a direct action and entails special procedural rules which govern its commencement and continuation.

\* \* \* \* \* \*

Because the derivative action belongs to the corporation, there are a number of procedural rules which apply only to such actions and not to direct actions. \* \* \* Rule 23.1 of the Federal Rules of Civil Procedure details certain procedural rules which apply only to derivative actions. Namely, the complaint must be verified and must allege: (1) the plaintiff was a shareholder or member at the time of the transaction of which the complaint

is made or became such shareholder or member by operation of law; (2) the action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have; (3) the efforts, if any, made by the plaintiff to obtain the desired action from directors or other governing authority and if necessary from the shareholders or members, and the reasons for the failure to obtain the action or not make the effort. The rule also provides that a derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association. The action may not be dismissed or compromised without the approval of the court and notice of the dismissal or compromise must be given to the shareholders or members in such a manner as the court directs. Many states have rules of procedure which follow Rule 23.1 in whole or in part.

Since the derivative action is an action which belongs to the corporation rather than the shareholder plaintiff, the procedural rules generally require that the plaintiff make an effort to obtain the desired action by demand on the corporate directors or in some cases the shareholders before an action may be commenced. In some cases, for example, where the action is for breach of fiduciary duty by a majority of the directors, the demand may be excused. (Citations omitted)

*Section 5.06 Shareholder Direct Actions—Nonderivative Class Actions*

Shareholder actions against the corporation may also be brought as actions belonging to the shareholders in their own right rather than as derivative actions. There are consequences which flow from the characterization of an action as direct rather than as derivative. * * * Furthermore, any judgment recovered in a derivative action belongs to the corporation. Therefore, the recovery may not necessarily directly benefit the shareholder plaintiffs. In direct actions, of course, the plaintiff-shareholders will be in complete control of the action and will receive their proportionate share of any judgment directly.

However, it is not the plaintiff's characterization of the action which will determine whether or not it is a direct action. Ultimately it is the court which must determine in each instance whether a particular action is a derivative action or a direct action. It is stated that no clear-cut rule has emerged to distinguish the two types of actions. A common approach of the courts is to consider the impact of alleged injury. Was the injury directly to the shareholder or was it to the corporation? Thus, actions brought for breach of director' or officer' fiduciary duty will generally be derivative actions unless the plaintiff can show some special injury which is not common to all shareholders, such as that the injury to plaintiff arose out of plaintiff's relationship to the transaction complained of other than as a shareholder, for example, as a creditor.

Obvious cases of a derivative actions are actions claiming excessive compensation to officers or directors, or actions claiming a breach of fiduciary duty by an officer or director.

\* \* \* \* \* \*

Very often the direct action will involve a group or class of shareholders some of whose claims may be too small to justify the expense and burden of litigation. The class action is a method whereby many wronged parties can link their claims in a common action to seek redress from the wrongdoer. Special rules have been developed to permit this type of litigation. Of course, both derivative and direct actions may be prosecuted as class actions. However, since a derivative action is by its nature a representative action, that is, an action brought on behalf of someone other than the plaintiff-shareholder, it is not necessary to bring the action on behalf of other shareholders. With a direct action it is more likely that a shareholder will seek to enhance his claim by suing on behalf of

all other similarly situated shareholders. (Citations omitted)

See also *Nordberg v. Lord, Day & Lord,* 107 F.R.D. 692, 697 (S.D.N.Y.1985) and *Lewis v. Chiles,* 719 F.2d 1044, 1048 (9th Cir.1983).

The aforesaid discussion of the distinction between derivative and direct actions applies to corporations. However, since Rule 23.1 expressly applies to "derivative action(s) brought by one or more ... members to enforce a right ·... of an unincorporated association ...", there is no reason to assume that the general rules distinguishing the two actions would not apply to a case such as this where plaintiffs expressly "bring this action as members and legal representatives of the Bass Anglers Sportsman Society ... an unincorporated association ..." (third amended complaint, para. 13).

When these general rules are applied to this case, it is clear that the allegations of the third amended complaint purport to state a derivative action. In addition to the allegations that the plaintiffs filed the case as members and legal representatives of the Bass Anglers Sportsman Society, an unincorporated corporation, the complaint also alleges that the relief sought "is for the Society itself, not for the pecuniary benefit of plaintiffs or any Society member personally" (Para. 21). The action specifically alleges breach of fiduciary duties by the proposed defendants to Bass Anglers Sportsman Society (Count II). No special relationship or injury is alleged by plaintiffs which is not common to the other members of the association. Accordingly, since plaintiffs' cause of action is clearly derivative, they are subject to the requirements of Rule 23.1. *Eastern Oklahoma Television Company, Inc. v. Ameco, Inc.,* 437 F.2d 138, 141 (10th Cir.1971).

The allegations of the third amended complaint do not meet the requirements of Rule 23.1. The complaint is not verified.

It does not ·allege that plaintiffs were ·shareholders or members at the time of the transaction of which they complain or that membership thereafter devolved upon them by operation of law. It does not allege that the action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have. It does not allege with particularity the efforts, if any, made by plaintiffs to obtain the action plaintiffs desire from the directors or comparable authority and the reasons for their failure to obtain the action or for not making the effort. The court has no authority to waive these requirements or to infer their existence from the voluminous allegations in the third amended complaint itself or from the even more voluminous motions which have been filed in the case.

■ In view of the court's finding that the third amended complaint does not comply with the requirements of Rule 23.1, it follows that allowing the amendment would be a futile act because the amended pleading cannot withstand a motion to dismiss and because it otherwise fails to state a claim. *Ketchum v. Cruz,* 961 F.2d 916, 920 (10th Cir.1992) and *Schepp v. Fremont County, Wyoming,* 900 F.2d 1448, 1451 (10th Cir.1990).[5]

Accordingly, plaintiffs' motion to file a third amended complaint (Doc. 84) is denied.

### IV. *Remaining Vitality of the Original Complaint*

■ The first and second amended complaints having been dismissed, and leave to file the third amended complaint having been denied, the only issue remaining is the vitality of the original complaint, *Bradley v. Sevier.* The pertinent allegations of this pleading are as follows:

1. Ray Scott is the founder of the Bass Anglers Sportsman Society of America, a non-profit unincorporated association.

---

5. In view of arguments made by the parties, the court believes it should anticipate and put to rest any claim by plaintiffs that the third amended complaint nevertheless may proceed under Fed.R.Civ.P. 23.2. The court finds that it cannot. The allegations of the third amended complaint clearly purport to state a derivative action. Since Rule 23.1 is expressly applicable to derivative actions, it would not be appropriate for the court to treat the case as falling under Rule 23.2 which, by its terms, does not apply to derivative actions.

Since its founding in 1967, Scott has served as the *de facto* president of the Society. Since its incorporation on May 16, 1969, B.A.S.S., Inc. has been used to fraudulently convert the Society's assets (e.g. Bassmaster Magazine) and revenues (Para. 5).

2. Upon information and belief, defendant Sevier became Ray Scott's business associate in approximately 1970. Since then, she has been the person most active in the daily management of the Society and B.A.S.S., Inc. (Para. 6).

3. After Sevier associated with Scott, she learned that B.A.S.S., Inc. was an unlawful incorporation of the Society and that Scott used B.A.S.S., Inc. as a fraudulent artifice to convert the Society's assets and revenues. Sevier then conspired with Scott to keep this fraud concealed so they could continue to divert the Society's assets and revenues to Scott's corporation [B.A.S.S., Inc.] (Para. 7).

4. The fraudulent and tortious acts of Scott, B.A.S.S., Inc. and defendant Sevier have caused injury to plaintiff's rights as a member of the Society. As part of said fraudulent acts, the defendant has conducted and continues to conduct business in the state of Kansas and derives substantial income from the state of Kansas. Jurisdiction over this defendant is authorized by K.S.A. 60–308(b)(1), (2), (5) and (7) (Para. 8).

5. Defendant Sevier has fraudulently and tortiously conspired to convert the assets and revenue of the Society to her own personal use and enrichment (Para. 10).

6. B.A.S.S., Inc. is used to fraudulently convert the Society's assets and revenues. At the same time, defendant Sevier has made it appear that the Society has remained unchanged.

7. B.A.S.S., Inc. is used to fraudulently convert the Society's assets and revenues. At the same time, defendant Sevier has made it appear that the Society has remained unchanged. Defendant Sevier has conspired to conceal this ongoing fraudulent scheme by making numerous false (or untrue) representations of existing and material fact that were known to be false or untrue or were recklessly made without knowledge concerning them. These false (or untrue) representations of existing and material fact include:

(a) Misrepresenting the original founding dates of B.A.S.S. and B.A.S.S., Inc.;

(b) Misrepresenting the true origins of B.A.S.S. as a non-profit unincorporated association for conservation/fishing promotion purposes;

(c) Misrepresenting B.A.S.S. and B.A.S.S., Inc. to appear as one and the same and playing a "shell game" to make B.A.S.S. and B.A.S.S., Inc. appear interchangeable;

(d) Misrepresenting that B.A.S.S., Inc. had a lawful right to own the *Bassmaster Magazine* and other assets which belong to the Society and its members;

(e) Misrepresenting by silence, when defendant had a duty to fully disclose all material facts concerning the Society and the loss of its assets and revenues to B.A.S.S., Inc. (Para. 11).

8. Plaintiff reasonably relied on the aforesaid misrepresentations, believed them to be true, and acted upon these misrepresentations by becoming a member of the Society and continuing to support the Society in order to help accomplish the Society's founding goals (Para. 12).

9. Plaintiff has sustained damages as a result of the aforesaid fraudulent representations (and omissions), because plaintiff's membership dues and the Society's excess income have not been expended for the Society's founding goals but, instead, have been converted to defendant's own personal use and enrichment (Para. 13).

The first question is whether the allegations of this pleading purport to state a derivative or direct action. While the distinction is not as obvious as in the third amended complaint, the court believes that the allegations, considered as a whole, are

576

those of a derivative action. While plaintiff does not clearly state that he is bringing the action as a representative of and on behalf of the Society, he alleges no special relationship to the acts complained of other than as a member of the Society. *Fletcher, supra,* § 5.06. Moreover, the conclusion that plaintiff is acting on behalf of the Society is reinforced by the relief he seeks. For these reasons alone, the complaint is subject to dismissal for the same reasons pertaining to the third amended complaint.

 The complaint is also subject to dismissal on another ground. No summons was issued in connection with the original complaint. Sevier's affidavit, attached to her motion to dismiss, indicates that she was served with the first amended complaint but that pleading was dismissed by Chief Judge Kelly. Service of process, of course, is an absolute prerequisite to jurisdiction except where the defendant voluntarily enters an appearance or otherwise evidences unqualified assent to jurisdiction. *See Lisak v. Mercantile Bancorp, Inc.,* 834 F.2d 668, 671 (7th Cir.), *cert. denied* 485 U.S. 1007, 108 S.Ct. 1472, 99 L.Ed.2d 700 (1987). Sevier has not done this. While she obviously has knowledge of the original complaint and while counsel has entered their appearance on her behalf to contest the second amended complaint and subsequent matters, the court can perceive no basis to find that these facts cure the failure to serve the original complaint or otherwise confer personal jurisdiction of this court over Sevier. Accordingly, plaintiff Murray's original complaint (Doc. 1) is dismissed. Fed.R.Civ.P. 12(b)(2).

In view of the court's rulings, which operate as a complete dismissal of this case, it is not necessary for the court to consider any of the large number of other motions filed by the parties. All motions filed by the parties which have not been ruled upon by this memorandum and order are denied as moot.

In the event any of the parties move for reconsideration of any part of this order, the motion, including exhibits and appendices, if any, shall not exceed 25 pages. Responsive memoranda shall not exceed 15

pages and reply memoranda, if any, shall not exceed 10 pages.

IT IS SO ORDERED.