**Bradley MURRAY, Plaintiff,**

v.

**Helen SEVIER, Defendant.**

**Civ. A. No. 92–1073–MLB.**

United States District Court,
D. Kansas.

June 8, 1994.

Randall E. Fisher, Mark B. Hutton, Michaud, Hutton, Fisher & Andersen, Wichita, KS, Robert Blakey, University of Notre Dame Law School, Notre Dame, IN, for plaintiffs, Bradley Murray, Larry Neff, as members and legal representatives of Bass Anglers Sportsman Soc.

Randall E. Fisher, Mark B. Hutton, Michaud, Hutton, Fisher & Andersen, Wichita, KS, for plaintiff Bradley Murray.

Diane S. Worth, Dennis M. Feeney, Morris, Laing, Evans, Brock & Kennedy, Chtd., Wichita, KS, Jack H. Watson, Jr., J. Allen Maines, Eric Lang, Long, Aldridge & Norman, Atlanta, GA, for defendant Ray W. Scott, Jr.

William Robert Martin, Richard K. Thompson, Martin, Pringle, Oliver, Wallace & Swartz, Wichita, KS, Lee H. Zell, Patricia Clotfelter, Lisa A. Wright, Berkowitz, Lefkovits, Isom & Kushner, Patricia T. Mandt, Bradley, Arant, Rose & White, Birmingham, AL, for defendants B.A.S.S. Inc., Helen Sevier, John S. Jemison, Jr., Jemison Inv. Co., Inc., aka Jemison Inc., Karl L. Dabbs and James D. Davis.

### MEMORANDUM AND ORDER

BELOT, District Judge.

This matter comes before the court on plaintiff's amended motion for leave to file a fourth amended complaint. (Doc. 155).

Plaintiff, on behalf of himself and all of the other half-million members of the Bass Anglers Sportsman Society ("B.A.S.S."), an unincorporated association, seeks to recover funds that allegedly have been looted from B.A.S.S. by Ray Scott, Jr., Helen Sevier, James D. Davis, Karl L. Dabbs, and Jemison Investment Co., Inc. ("the defendants") under the guise of a corporation, Bass Anglers Sportsman Society of America, Inc. ("B.A.S.S., Inc."). Plaintiff alleges defendants conspired to defraud and breached their fiduciary duties to B.A.S.S. members. He wishes any misappropriated funds to be reappropriated to B.A.S.S.'s members so that they can be used to run B.A.S.S. and accomplish its stated purposes, namely: (1) conservation of our nation's waterways to enhance our nation's fisheries, with particular emphasis on bass fisheries; (2) the promotion of bass fishing as a sport; and (3) the promotion of fishing among youths.

The "checkered history" of this case has been summarized by the court in its Memorandum and Order of Dismissal filed January 27, 1993, reported in 145 F.R.D. 563, and will not be rehashed. (Doc. 136, pp. 1–3; 145 F.R.D. at 564–65). Some additional background, beginning with the January 1993 ruling, is in order.

In its January 27, 1993 Memorandum and Order, this court found that plaintiff's *third* amended complaint "purport[ed] to state a derivative action" under Federal Rule of Civil Procedure 23.1. That finding was based primarily on language in the third amended complaint indicating that "the relief sought '[wa]s for the Society itself, not for the pecuniary benefit of plaintiffs or any Society

member personally.' " 145 F.R.D. at 574. The court dismissed plaintiff's complaint because it clearly failed to meet Rule 23.1's express requirements for derivative actions with respect to verification and the allegation of certain facts. *Id.*

Subsequently, plaintiff filed a motion for reconsideration conceding that "certain language in the [third amended] complaint might be construed as seeking derivative and not direct class relief." (Doc. 141, p. 7). Plaintiff requested that the court grant him leave to file a fourth amended complaint in order to "cure any doubts as to this Court's power to hear this case as a class action." (Doc. 141, p. 19). To his motion, plaintiff attached a joint affidavit from his counsel, Randy Fisher and G. Robert Blakey, stating their intention to "redraft the complaint, eliminating any language which could be misconstrued as asserting derivative claims ... so that it can only be construed, reasonably, as asserting primary or direct claims by Murray, individually and on behalf of all other individuals who believed themselves to be 'B.A.S.S.' members." (Doc. 141, Ex. A, p. 3). Counsel further stated their intent to assert RICO claims in this fourth amended complaint. *Id.*

On June 21, 1993, the court filed an Order regarding plaintiff's motion for reconsideration. (Doc. 154, reported at 149 F.R.D. 638). The court ordered plaintiff to file an amended motion for leave to file a fourth amended complaint limited to the *direct* state claims and the proposed RICO claim. Plaintiff has done so, and that motion, as well as plaintiff's proposed fourth amended complaint itself (which sets forth only state law claims and does not contain any RICO claims), are now before the court.

## STANDARDS FOR LEAVE TO AMEND

■ Under Federal Rule of Civil Procedure 15(a), leave to amend shall be freely given whenever justice so requires. A court may deny leave to amend, however, where the amendment would be futile. *Sooner*

*Products Co. v. McBride,* 708 F.2d 510, 512 (10th Cir.1983) (citing *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)). If a proposed amendment cannot withstand a motion to dismiss or otherwise fails to state a claim, then the court is clearly justified in denying an amendment on futility grounds. *Ketchum v. Cruz,* 961 F.2d 916, 920 (10th Cir.1992) (quoting *Schepp v. Fremont County,* 900 F.2d 1448, 1451 (10th Cir.1990)). *See Denmon v. Runyon,* 151 F.R.D. 404, 405 (D.Kan.1993) (O'Connor, J.).

■ In ascertaining whether plaintiff's proposed amended complaint is likely to survive a motion to dismiss, the court must construe the complaint in the light most favorable to plaintiff, *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), and the allegations in the complaint must be accepted as true, *Hughes v. Rowe,* 449 U.S. 5, 10, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980) (per curiam). Any ambiguities must be resolved in favor of plaintiff, *see e.g., Hughes,* 449 U.S. at 10, 101 S.Ct. at 176, giving him "the benefit of every reasonable inference" drawn from the "well-pleaded" facts and allegations in his complaint, *Retail Clerks Int'l Ass'n v. Schermerhorn,* 373 U.S. 746, 753 n. 6, 83 S.Ct. 1461, 1465–66 n. 6, 10 L.Ed.2d 678 (1963). The court may not dismiss the plaintiff's claims merely because it questions the veracity of his allegations.[1]

## DISCUSSION

Plaintiff seeks leave to amend in order to: (1) state, as a class action, *direct* claims for relief on behalf of all current members of B.A.S.S., under Fed.R.Civ.P. 15(a); (2) join additional parties—Ray W. Scott, Jr., B.A.S.S., Inc., Jemison Investment Co., Inc., James D. Davis, and Karl L. Dabbs—under Fed.R.Civ.P. 20(a); and (3) include supplemental pleadings under Fed.R.Civ.P. 15(d). The defendants have responded and contend that plaintiff's motion to amend is subject to a motion to dismiss (i.e., futile) because: (1) plaintiff's proposed fourth amended com-

---

1. Indeed, this Memorandum and Order deals with jurisdictional and procedural issues only and should not be construed as an endorsement of either plaintiff's or defendants' positions. All parties and their counsel are admonished not to misrepresent the meaning and significance of this opinion to B.A.S.S. members or anyone else who may have an interest in this litigation.

plaint, like his previous complaints, states a *derivative* action but fails to meet the requirements of Rule 23.1; (2) even if plaintiff's proposed fourth amended complaint states a *direct* class action, plaintiff is not an adequate representative of the other B.A.S.S. members, as required by Rule 23 and Rule 23.2; and (3) in any event, the court lacks subject-matter jurisdiction over this case and (4) lacks personal jurisdiction over defendants Sevier, Dabbs, Davis, and Jemison Investments.[2] In addition, in the event plaintiff's motion to amend is granted, defendants request that the court transfer this case to the Middle District of Alabama pursuant to 28 U.S.C. § 1404(a) and that the court strike certain scandalous matter included in the fourth amended complaint. The court will address each of these six issues raised by the defendants. Before doing so, however, the court wishes to take up a preliminary matter.

Plaintiff's proposed fourth amended complaint expressly characterizes B.A.S.S. as an "unincorporated association," (¶ 4), and expressly avers a direct class action under "Fed.R.Civ.P. 23(b)(1)(A); and/or 23(b)(1)(B); and 23(b)(2)," (¶ 24). Rule 23, subsections (a) and (b), provide:

### Rule 23. Class Actions

**(a) Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

**(b) Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

**(1)** the prosecution of separate actions by or against individual members of the class would create a risk of

**(A)** inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

**(B)** adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

**(2)** the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

**(3)** the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Defendants contend that if plaintiff is allowed to pursue a class action, he must do so under Rule 23(b)(3), not (b)(1) or (b)(2).

Significantly, plaintiff does not purport to plead, and defendants do not contend that he should have plead, his class action under Rule 23.2 which specifically addresses direct class actions by the members of an unincorporated association.

An action brought by or against the members of an unincorporated association

---

**2.** Defendants also have argued that, regardless of whether plaintiff's proposed fourth amended complaint states a derivative or direct action, it is barred by the two dismissal rule of Federal

Rule of Civil Procedure 41(a)(1). That issue was fully addressed in the court's January 27, 1993 Memorandum and Order, pages 5–8 (145 F.R.D. at 566–67), and merits no further discussion.

as a class by naming certain members as representative parties may be maintained only if it appears that the representative parties will fairly and adequately protect the interests of the association and its members. In the conduct of the action the court may make appropriate orders corresponding with those described in Rule 23(d), and the procedure for dismissal or compromise of the action shall correspond with that provided in Rule 23(e).

According to plaintiff, "[t]he fact that Rule 23.2 expressly deals with suits by or against the members of an 'unincorporated association' does not mean this Court is limited to use of that rule to the exclusion of any other appropriate class method provided in Rule 23." (Doc. 155, p. 9, n. 4). Plaintiff contends that "Rule 23.2 does not actually provide a new or alternative class procedure distinct from those found in Rule 23(b)(1), (b)(2) or (b)(3)." *Id.*

The court is exceedingly troubled that this action is not being plead under Rule 23.2 when that Rule seems tailor-made for this case.[3] Plaintiff's contention that the class prerequisites under Rule 23.2 case are no different from those under Rule 23 ignores a whole line of authorities addressing that very issue. *See Curley v. Brignoli, Curley & Roberts Assoc's.,* 915 F.2d 81, 85–86 (2d Cir. 1990), *cert. denied,* 499 U.S. 955, 111 S.Ct. 1430, 113 L.Ed.2d 484 (1991); *Sembach v. McMahon College, Inc.,* 86 F.R.D. 188, 190 & n. 3 (S.D.Tex.1980); *Gay Liberation v. University of Missouri,* 416 F.Supp. 1350, 1360 (W.D.Mo.1976), *rev'd on other grounds,* 558 F.2d 848 (8th Cir.1977); *Suchem, Inc. v. Central Aguirre Sugar Co.,* 52 F.R.D. 348, 355 (D.C.Puerto Rico 1971); *Management Television Systems, Inc. v. National Football League,* 52 F.R.D. 162, 164 (E.D.Pa.1971); 7C Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1861, at 220–22 (1986) [hereinafter "Wright & Miller"]; 3B James Wm. Moore et al., *Moore's Federal Practice* ¶ 23.2.02, at 23.2–8 through 23.2–10 (2d ed. 1993) [hereinafter *Moore's* ]. Most of these authorities contravene plaintiff's position and hold that the only requirement a representative plaintiff must meet in a class action involving an unincorporated association is that he will fairly and adequately protect the interests of the association and its members.

The language of rule 23.2 specifies only one prerequisite to class treatment, fair and adequate representation.... We consider the prerequisites to class certification contained in Fed.R.Civ.P. 23(a), such as the requirement that the class be "so numerous that joinder of all members is impracticable," to be inapplicable to a rule 23.2 class action. While there is some disagreement on this point, the more persuasive reasoning supports this interpretation. Rule 23.2 expressly refers to subdivisions (d) and (e) of rule 23 when incorporating the provisions of rule 23 with respect to orders regarding the conduct of class actions, subdivision (d), and dismissal or compromise, subdivision (e). It would therefore seem that if the drafters sought to incorporate the requirements of subdivision (a) of rule 23, as well, they would have done so expressly. Indeed, the advisory committee note specifies that rule 23.2 deals "separately" with actions under its purview, "referring *where appropriate* to Rule 23." Fed.R.Civ.P. 23.2 advisory committee's note (emphasis added).

*Curley,* 915 F.2d at 85–86. Similar reasoning is employed by Wright & Miller:

Rule 23.2 appears to permit the institution of class actions by or against unincorporated associations without fulfilling all of the requirements prescribed by Rule 23 for class actions. This seems to be the logical implication of the passage in the Advisory Committee's Note indicating that the main purpose of treating an unincorporated association as a class "has been to

---

**3.** Plaintiff's failure to proceed under Rule 23.2 is particularly puzzling in view of plaintiff's consultations with Arthur R. Miller, of the "famed Wright & Miller," who is allegedly "familiar with the facts and salient pleadings in this case." (Doc. 155, p. 5, n. 1). Certainly there is nothing in Professor Miller's treatise to indicate that Rule 23.2 is inapplicable or inappropriate in this case. 7C Wright & Miller, § 1861. Indeed, Wright & Miller suggests that Rule 23.2 is uniquely appropriate for this type of case and deals *separately* with direct class actions involving unincorporated associations. See discussion *infra.*

give 'entity treatment' to the association when for formal reasons it cannot sue or be sued as a jural person under Rule 17(b)." This objective suggests the inapplicability of those conditions for maintaining class actions, especially the four set out in Rule 23(a), that would make it difficult for an unincorporated association to sue or be sued.

But the judicial decisions to date have cast some doubt on this issue. Some district courts have held that the Rule 23 requirements, particularly the provision calling for the class to be so numerous as to make joinder impracticable, also are operable in actions under Rule 23.2. Other district courts,[4] however, have held that the Rule 23 prerequisites need not be satisfied in litigation under Rule 23.2. There are persuasive arguments favoring this latter view. In addition to the statement of intent in the Advisory Committee's Note, Rule 23.2 itself expressly provides that the parties acting as representatives must fairly and adequately protect the interests of the association and its members. The standards developed under Rule 23(a) certainly provide a ready analogy, but should not be viewed as controlling. Nor is there any reason to read the other Rule 23(a) prerequisites relating to the size of the class, the existence of common issues of law or fact, or the typicalness of the representatives' claims or defenses in every Rule 23.2 action, although certain aspects of these principles certainly are embraced in the notion of adequacy of representation.

In addition, Rule 23(d), which lists the orders the district court may make in connection with a class action, is specifically incorporated by reference in Rule 23.2, as is Rule 23(e), which requires approval of the court, following notice, for the dismissal or compromise of a class action. The explicit incorporation of these portions of Rule 23 suggests that the other provisions

in that rule, including the limitations in Rule 23(a) of when a class action may be maintained, do not apply to actions involving an unincorporated association. This construction is reinforced by the last sentence of the Advisory Committee Note to Rule 23.2, which states that the rule deals "separately" with these actions, referring "where appropriate" to Rule 23.

Wright & Miller, § 1861, at 221–22. A district judge in this circuit has recently stated that he is "convinced that the Second Circuit's decision in *Curley* provides the correct interpretation of Rule 23.2" and "that it is not necessary to satisfy the other prerequisites of Rule 23 if the requirements of Rule 23.2 are met." *Resolution Trust Corp. v. Deloitte & Touche*, 822 F.Supp. 1512, 1515–16 (D.Colo.1993) (Carrigan, J.) (also finding that even if *Curley* is not correct, the requirements of Rule 23 had been met).

■ This court agrees with the Second Circuit, Wright & Miller, and Judge Carrigan that the class action prerequisites in Rule 23 are not implicated in Rule 23.2. All that is required is that plaintiff show that he can fairly and adequately protect the interests of B.A.S.S. and its members. That issue is in dispute and will be discussed *infra*. At this point, the court merely finds that the class action plaintiff has attempted to plead in his proposed fourth amended complaint falls squarely within Rule 23.2, and, in order for plaintiff to proceed, his fourth amended complaint must be changed to reflect that it is stating a Rule 23.2 class action. This court will not allow plaintiff to proceed as though Rule 23.2 does not exist when it is abundantly clear that this case is the very type Rule 23.2 was intended to encompass. Rule 23.2 is a rule of procedure, and the court is bound by the admonition that the rules "shall be construed and administered to secure the just, speedy and inexpensive determination of every action." Fed.R.Civ.P. 1. It is apparent that Rule 23.2's application to the present case will facilitate that goal.[5]

---

4. Obviously, this comment predates the Second Circuit's opinion in *Curley*. Wright & Miller cite *Curley* in their 1994 supplement.

5. The court will note that had it disagreed with *Curley* and/or believed plaintiff should be allowed

to proceed under Rule 23, plaintiffs would likely have met the additional prerequisites under 23(a)—numerosity, typicality, and common questions of law and fact—and established a basis for class certification under Rule 23(b)(1), given the legal relationship that exists between the putative

The court will now consider the six issues raised by the defendants.

I. *Does Plaintiff's Proposed Fourth Amended Complaint State a Direct Class Action Under Fed.R.Civ.P. 23.2 or a Derivative Action Under Fed.R.Civ.P. 23.1?*

A. *Actions maintainable involving an unincorporated association*

Under the Federal Rules of Civil Procedure, there are at least four types of actions that conceivably could be prosecuted by or on behalf of an unincorporated association and/or its members. Three are so-called direct actions. *See* Wright & Miller, § 1861, at 214–15 ("three procedures by which an unincorporated association may sue or be sued"); *Moore's*, ¶ 23.2.02, at 23.2–3 ("Suits by or against unincorporated associations are maintainable generally in one of three different ways."). The fourth is a derivative action under Federal Rule of Civil Procedure 23.1.

In the **first** type of direct action, an unincorporated association sues in its own name. If the laws of the state in which the district court is held provide that an unincorporated association has capacity to sue, then the unincorporated association can bring suit on its own behalf. Fed.R.Civ.P. 17(b). Moreover, even if the applicable state law does not provide unincorporated associations capacity to sue, the association can still bring an action in its own name if it is seeking to enforce a substantive legal right existing under the Constitution or laws of the United States. Fed.R.Civ.P. 17(b)(1).

█ In the present case, plaintiff's proposed fourth amended complaint alleges only state law causes of action—that is, it does not seek to enforce rights under the Constitution or laws of the United States [6]—and, under Kansas law, an unincorporated association cannot sue in its own name. *Frey, Inc. v. City of Wichita*, 11 Kan.App.2d 116, 117, 121, 715 P.2d 417 (1986); *Kansas Private Club Ass'n v. Londerholm*, 196 Kan. 1, 3–4, 408 P.2d 891 (1965) (holding that K.S.A. 60–223, which parallels Fed.R.Civ.P. 23, does not "create legal entities out of voluntary, unincorporated associations" or "serve as an enabling act permitting such associations to bring actions in their own name as parties plaintiff").[7] Hence, B.A.S.S. cannot sue in its own name or on its own behalf in Kansas federal court. The parties do not dispute that issue.

The **second** and **third** types of direct actions involving an unincorporated association are brought by or against the association's members, not the association itself. The members seek to enforce their own rights, not the rights of the association. In the **second** type, all of the members of the association are joined as plaintiffs or defendants in one lawsuit. In the **third** type, one or more members bring a class action as representatives of all the other members because joinder of each member is not feasible. Fed.R.Civ.P. 23.2. Class actions, in particular, are frequently the mode of recourse in cases involving unincorporated associations.[8]

Where there is no statutory authorization of suits by or against an unincorporated association in the association name, the remedy, when a cause of action for or against an association exists, is by an action in the names of the several persons constituting the association, or by an action brought as a class suit, or in the name of a trustee or trustees in whom some right of property is vested or who is specifically authorized to sue....

The doctrine of virtual representation, which recognizes the right of a few persons to sue or defend on behalf of themselves

---

class members through their affiliation in B.A.S.S.

**6.** Had plaintiff proceeded with his proposed RICO claim, B.A.S.S. would have been able to sue in its own right with respect to that particular claim.

**7.** Under the laws of the state of Alabama, where B.A.S.S. is principally located, "[a]n action may be commenced by, and in the name of, any unincorporated organization or association." Ala.Code § 6–7–80. See discussion *infra* about the nature of this procedural right.

**8.** In fact, as plaintiff has demonstrated, class actions and the law of unincorporated associations have a historical connection. *See Developments in the Law of Class Actions*, 89 Harv. L.Rev. 1319, 1335–37 (1976).

and all others similarly situated, has frequently been applied in the case of actions by or against voluntary unincorporated associations or clubs; and it is well settled that where the members of such an association are too numerous to be joined in the action, or where the association or club is composed of a great many members, one or more of the members may sue on behalf of all the interested parties....

The Federal Rules of Civil Procedure permit class suits when the parties are so numerous as to make it impracticable to bring them all before the court, and this provision has been held or recognized to be applicable in actions in federal courts by or against unincorporated associations....

6 Am.Jur.2d, *Associations and Clubs* § 54–55 (1963); *see also* 7 C.J.S., *Associations* § 43 (1980). For large unincorporated associations such as B.A.S.S., a direct class action is clearly preferable.

Finally, the **fourth** type of action involving unincorporated associations is the *derivative* action, in which one or more members seek "to enforce a right ... of [the] unincorporated association" because the association has "failed to enforce a right which may properly be asserted by it." Fed.R.Civ.P. 23.1. In derivative actions, the right asserted belongs to the unincorporated association, and any amounts recovered are owed to the association itself. *Daily Income Fund, Inc. v. Fox,* 464 U.S. 523, 528–34, 104 S.Ct. 831, 834–37, 78 L.Ed.2d 645 (1984) (holding that "derivative action" is action in which the right plaintiff seeks to have enforced is one the corporation or other entity *itself* could have enforced in court); *Ross v. Bernhard,* 396 U.S. 531, 537, 90 S.Ct. 733, 738, 24 L.Ed.2d 729 (1970) (holding that stockholder's claim is "not his own but the corporation's"); 13 *Fletcher Cyc. Corp.* § 5939, at 12 (Perm. ed. 1991) ("The difference lies in the nature of the right sought to be enforced.").

■ Unlike class actions, derivative actions rarely involve unincorporated associations. Instead, they are normally associated with shareholder suits brought to assert a right of a corporation when the corporation's officers themselves refuse to enforce that right or are themselves the subject of the shareholder's action.[9] A shareholder is not allowed to enforce a right of the corporation in the form of a *direct* action. He can bring a direct action only if he is seeking to enforce rights concerning duties and/or injuries peculiar to him. That is, a shareholder is precluded from bringing a *direct* action unless he can show that the alleged wrongdoers breached a special duty owed to him or that he suffered an injury separate and distinct from that suffered by other shareholders. 12B *Fletcher Cyc. Corp.* § 5911; *Sax v. World Wide Press, Inc.,* 809 F.2d 610 (9th Cir.1987); *Lenz v. Associated Inns & Restaurants Co. of America,* 833 F.Supp. 362, 379–81 & n. 18 (S.D.N.Y.1993).

**B.** *Summary of the parties' contentions*

This time around, plaintiff does not seek to assert a derivative action and, in fact, contends that it would be impossible to do so. He argues that, under both Kansas and Alabama law, B.A.S.S. is not a legal entity and has no substantive legal rights which plaintiff could seek to enforce in the form of a derivative action. In paragraph 23 of his proposed fourth amended complaint, plaintiff explicitly states:

> "This action is brought on behalf of, and the class herein consists of, all persons who are currently 'members' of an unincorporated association named 'Bass Anglers Sportsman Society,' also known as 'B.A.S.S.' *This action is brought on behalf of all such persons and not the 'association' itself, because the 'association' is not a legal entity itself and has no substantive legal rights or duties.* Rather, as used herein, the word 'association' merely refers to the contract of association between all B.A.S.S. members to accomplish those association purposes identified in paragraph 6 above."

(emphasis added).

The defendants maintain that plaintiff's statement in his proposed fourth amended complaint is subterfuge and that plaintiff's suit is still derivative in nature and cannot be recharacterized as a direct class action.

**9.** The caption to Rule 23.1 simply refers to "Derivative Actions by Shareholders."

When an individual sues "on behalf of" others, for injuries suffered in a group, rather than in an individual, capacity, that individual asserts derivative, not direct, claims.

(Proposed Defendant Scott's Response, Doc. 156, p. 5).[10]

[T]he fourth amended complaint alleges no injury to any individual B.A.S.S. member that is separate or distinct from the injury allegedly sustained by all members. Thus, the claims continue to be based upon "secondary or derivative," rather than "primary or personal," rights and clearly are derivative in nature.

(Defendant Sevier and Proposed Defendants Dabbs, Davis, Jemison Investment, and B.A.S.S., Inc.'s Response, Doc. 157, p. 4).

C. *Analysis of the parties' contentions*

"The question whether a particular suit is derivative or direct is not always capable of easy resolution." Wright & Miller, § 1821, at 8 (1986). "In a diversity action, the determination will be made under state law." *Id.*; *see also Sax,* 809 F.2d at 613.

Under Kansas law, an unincorporated association has no legal entity separate and apart from its individual members and is incapable of itself owning property. *Kansas Private Club Ass'n,* 196 Kan. at 4, 408 P.2d 891. A similar rule appears to be followed in Alabama. As footnoted *supra,* Ala.Code § 6–7–80 authorizes suits by unincorporated associations in their own names, but that statute is procedural only and creates no new substantive rights. *See Adams v. Bethany Church,* 380 So.2d 788 (Ala.1980) (holding that even though Ala.Code § 6–7–80 grants unincorporated association capacity to sue, unincorporated association is not legal entity capable of acquiring or holding title to real property); *Enterprise Lodge No. 352 v. First Baptist Church,* 264 So.2d 153 (Ala.1972) (same); *see also* 6 Am.Jur.2d *Associations and Clubs* § 52, at 487 (1963) ("A statute or rule permitting an unincorporated association to sue or be sued in the associate name, or in the name of its officers, is procedural only.

It creates no new substantive right where none existed before its adoption."). This traces the common law.

At common law, an unincorporated association is not an entity, and has no status distinct from the persons composing it, but is rather a body of individuals acting together for the prosecution of a common enterprise without a corporate charter....

In the absence of statutory recognition or authority, the general rule is that unincorporated associations have no such legal existence as will permit them to acquire and hold property in the associate name either by purchase or gift, and that property ostensibly held by such unincorporated bodies is deemed to belong to the members jointly or as tenants in common. It follows that at common law, the members of an unincorporated association have the right to manage, control, and dispose of association property at their joint pleasure. Unless a trustee is designated to hold the legal title to the property, or unless some similar arrangement is made, property used and ostensibly owned by the association is in fact the property of its members. Such property is beneficially owned in common by the members in equal shares. In other words, as the rule is generally stated, each member of an unincorporated association has an interest in its assets so long as he remains a member, which interest is prima facie equal or proportionate, but which is subject, of course, to the right of the trustees, governing committee, or other board of control to dispose of as provided in the constitution and bylaws which form the contract between the member and the association.

6 Am.Jur.2d *Associations and Clubs* §§ 1, 23 (1963).

Generally, in the absence of a statute to the contrary, an association is not a legal entity separate from the persons who compose it, but is merely a creature of contract.... An "association" is ordinarily not a legal entity distinct from its component individuals, whereas a "corporation"

---

**10.** Defendant Sevier and proposed defendants Dabbs, Davis, Jemison Investments, and B.A.S.S., Inc. have expressly adopted the argu-

ments advanced by proposed defendant Scott. (Doc. 157, pp. 2–3, n. 3).

is always and necessarily a distinct and separate legal entity....

In the absence of a statute empowering it to do so, it is ordinarily held that an unincorporated association, having no legal existence independent of the members who compose it, is incapable, as an organization, of taking or holding either real or personal property in its associate name....

Since a voluntary association ordinarily has no separate entity, ... and, therefore, cannot, as such, acquire or hold property, ..., the .ownership of any property or funds acquired or held by it is vested in the members jointly, and they, accordingly, have the right to manage, control, and dispose of such property or funds at their joint pleasure.

7 C.J.S. *Associations* §§ 2–3, 35, 26 (1980).

Only a human being, or a group of humans recognized as a legal entity, can hold title to property, unless specific statutes provide otherwise. Early common law established that rule, and it still applies.

Howard L. Oleck, *Non–Profit Corporations, Organizations, and Associations* § 46, at 106 (5th ed. 1988).

The clear import of the above authorities is that, in the absence of a statute giving the unincorporated association itself a right to hold property, the members own the association property. It would thus appear that the property rights plaintiff seeks to enforce in this action are those of the members of B.A.S.S., not those of B.A.S.S. itself. That is, the rights belong to plaintiff and the other members of B.A.S.S., not to B.A.S.S. itself. The alleged wrongs of which plaintiff complains are not wrongs to B.A.S.S., but are wrongs to B.A.S.S. members—injuries to their respective joint, common and undivided interests in B.A.S.S. This conclusion is supported by a comparison of plaintiff's third amended and proposed fourth amended complaints.

The problem with plaintiff's *third* amended complaint, as identified by the court in its January 27, 1993 Memorandum and Order, was that although it may have been intended to assert a direct action, it sought derivative relief. Specifically, the third amended complaint stated: "The legal and equitable relief which plaintiffs seek is for the benefits of *the Society itself,* not for the pecuniary benefit of plaintiffs or any Society member personally." (¶ 21) (emphasis added).

Plaintiff's proposed fourth amended complaint is substantially more explicit about the rights plaintiff is seeking to enforce and the relief he is seeking to obtain. Unlike the proposed third amended complaint, there are no allegations that plaintiff is seeking to enforce any rights of B.A.S.S. itself or seeking relief for B.A.S.S. itself. Rather, beginning with the first paragraphs of the complaint, plaintiff clearly states that he is *seeking to* enforce the joint, common and undivided property interests of "B.A.S.S. members" and seeking to recover amounts owed to the members themselves as the holders of these interests. (Paras. 1–8). In addition, plaintiff's prayers for relief have been changed to accurately reflect a direct action.

In his third amended complaint, counts I through IV, plaintiff prayed for judgment "on behalf of *the Bass Anglers Sportsman Society.*" In his proposed fourth amended complaint, by contrast, plaintiff prays for judgment "on behalf of *himself and the class.*"

In his third amended complaint, counts I and II, plaintiff specifically prayed for an order for "an accounting to determine the losses sustained *by the Bass Anglers Sportsman Society,*" and requiring "defendants to pay *to the Bass Anglers Sportsman Society* actual damages found to be due after [that] accounting." In his proposed fourth amended complaint, by contrast, plaintiff prays for an order for "an accounting to determine the losses sustained *by plaintiff and the class*" and requiring "defendants to pay *to plaintiff and the class* all actual damages found to be due after [that] accounting."

In his third amended complaint, count III, plaintiff prayed for a "judgment declaring that *the Bass Anglers Sportsman Society* is the true and lawful owner of B.A.S.S., Inc. and *Bassmaster Magazine.*" In his proposed fourth amended complaint, by contrast, plaintiff prays for a "judgment declaring that *all current B.A.S.S. members jointly*

own ... *Bassmaster*" and "that *all current B.A.S.S. members jointly* own ... all other property which B.A.S.S., Inc., acquired, directly or indirectly, with B.A.S.S. membership dues, ad revenues or other assets belonging to B.A.S.S. members jointly." In the same count, third amended complaint, plaintiff also sought an "order [that] all assets of B.A.S.S., Inc. be held by defendants in constructive trust for the sole benefit of *the Bass Anglers Sportsman Society* ... until such time as *the Bass Anglers Sportsman Society* can elect or install a trustee or board of trustees." In his proposed fourth amended complaint, by contrast, plaintiff seeks an "order [that] all assets of B.A.S.S., Inc. be held by defendants in constructive trust for the sole benefit of *the plaintiff and the class* ... until such time as *the plaintiff and the class* can elect or install a trustee or board of trustees."

The defendants persist that plaintiff's proposed fourth amended complaint is properly viewed as setting forth a derivative action because plaintiff has not stated an "individualized" injury—an injury separate and distinct from that suffered by the other members. (Doc. 156, p. 5). But this argument completely ignores the nature of the rights plaintiff and the other B.A.S.S. members are seeking to enforce. In *Daily Income Fund,* the Supreme Court found that Rule 23.1 "obviously presupposes that the right in question could be enforced by the corporation [or unincorporated association]" and thus "is addressed only to situations in which shareholders [or members of unincorporated associations] seek to enforce a right that 'may properly be asserted' by the corporation [or association] itself." 464 U.S. at 528, 542, 104 S.Ct. at 834, 841.

■ When a shareholder in a corporation brings a derivative action, he is seeking to enforce a right of the corporation and recover damages suffered by the corporation. Similarly, when a member of an unincorporated association brings a derivative action, he is seeking to enforce a right of the association and recover damages suffered by the association. The action set forth in plaintiff's proposed fourth amended complaint is not a derivative action. It seeks to enforce the property rights of the plaintiff and the other members of B.A.S.S., not any right of B.A.S.S. itself, and recover assets allegedly owned jointly by plaintiff and the other members of B.A.S.S., not property owned by B.A.S.S. itself. If B.A.S.S. was a corporation or if there was a state statute granting B.A.S.S. some substantive legal right—for example, a statute providing unincorporated associations the right to acquire and own property—the court's decision might be different. In that case, B.A.S.S. itself would possess substantive legal rights and the injury allegedly suffered could be considered a single injury to B.A.S.S. As it stands, the only right B.A.S.S. itself possesses is the right to bring an action in its own name in Alabama courts under Ala.Code § 6–7–80. As stated *supra,* that is strictly a *procedural* right. It does not confer upon B.A.S.S. the right to hold property nor any other substantive right.

In conclusion, given the changes in plaintiff's fourth amended complaint, this court is satisfied that the rights plaintiff is seeking to enforce and the relief plaintiff is seeking to obtain are direct, not derivative, in nature.

## II. *Does Plaintiff Fairly and Adequately Represent the Interests of the Association and Its Members?*

■ As stated *supra,* a Rule 23.2 class action "may be maintained only if it appears that the representative parties will fairly and adequately protect the interests of the association and its members." This requirement is satisfied when: "(1) the named representatives have common interests with the other class members; and (2) the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Resolution Trust Corp. v. Deloitte & Touche,* 822 F.Supp. 1512, 1515 (D.Colo.1993).

Defendants contend that plaintiff would be an inadequate class representative for three reasons: (1) he is not actually a member of the class he proposes to represent; (2) he is subject to unique defenses; and (3) he lacks the knowledge and desire necessary to vigorously prosecute the proposed class's claims.

## A. Class membership—Breach of fiduciary duty claims

If plaintiff is not a member of the class he purports to represent, namely, the members of B.A.S.S. who have suffered injury as a result of the defendants' alleged looting, then Rule 23.2's requirement that the named plaintiff fairly and adequately protect the interests of the class is wanting and leave to maintain the class action must be denied. *See Merkey v. Bd. of Regents of State of Florida,* 344 F.Supp. 1296, 1303 (N.D.Fla. 1972). Defendants argue that "[b]ecause this action seeks to redress [defendants'] alleged wrongful incorporation of B.A.S.S., Inc. in 1969, and because Plaintiff did not join B.A.S.S. until 1982, Plaintiff is not a member of the injured class." (Doc. 156, p. 11). This argument mischaracterizes plaintiff's claims. It is clear from the proposed fourth amended complaint that the "redress" plaintiff seeks relates not just to the incorporation of B.A.S.S. in 1969, but the alleged execution of an elaborate scheme whereby individuals who joined B.A.S.S. *before* the creation of B.A.S.S., Inc. as well as individuals who joined B.A.S.S. *after* the creation of B.A.S.S., Inc. were "kept in the dark" about the entity status of B.A.S.S. while defendants took B.A.S.S. membership dues and revenues and used them for personal gain. According to plaintiff, that scheme continues to this very day. If plaintiff's claim is true, then all B.A.S.S. members have been similarly affected and all have an equal interest in having defendants' alleged scheme stopped.

In *Curley, supra,* 915 F.2d 81, three limited partners filed a derivative action to recover funds that had allegedly been looted from their limited partnership by the general partner, a corporation, and that general partner's/corporation's chief executive officer. The plaintiffs accused the corporation and chief executive officer of breach of fiduciary duties. The limited partnership, an "unincorporated association" within the meaning of Rule 23.2, was also a named defendant in the case. The case reached federal court on diversity grounds, the citizenship of the limited partnership being determined by the citizenship of the general partner only. The

district court ultimately ruled in plaintiffs' favor and granted the requested relief.

On appeal, the defendants contended, based on an intervening Supreme Court decision, *Carden v. Arkoma Associates,* 494 U.S. 185, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990), that the limited partnership should have been deemed to have the citizenship of each of its partners and, therefore, that the district court had lacked diversity jurisdiction. (See discussion of citizenship of unincorporated association *infra*). The Second Circuit agreed. However, the Second Circuit found a way around the ruling in *Carden* by *sua sponte* "recharacteriz[ing] the [plaintiffs'] derivative claim as a class claim" and eliminating the limited partnership as a party to the suit. *Id.* at 84–85. In executing this recharacterization, the Second Circuit considered whether plaintiffs (the limited partners) could meet the fair and adequate representation requirement of Rule 23.2. The court found:

> The gravamen of the complaint in this case ... is that the general partner, BCI, and its controlling shareholder, Brignoli, looted BCR for Brignoli's benefit. *All of the limited partners have an identical interest,* as does BCR, *in terminating that course of conduct and obtaining recompense* from BCI and Brignoli for the harm done by them to BCR. [Plaintiffs] not only were capable of fairly and adequately representing that interest; they in fact did so.

*Id.* at 85 (emphasis added).

The present case is similar to *Curley* with respect to the breach of fiduciary duty claims. Plaintiff and all the other members of B.A.S.S. have an identical interest in terminating the alleged conduct of B.A.S.S., Inc. and the people behind it. Hence, as to the breach of fiduciary duty claims, it *does* appear that plaintiff will fairly and adequately protect the class's interests.

## B. Unique defenses—Fraud claims

With respect to plaintiff's fraud claims, defendants argue that class treatment is inappropriate because plaintiff cannot establish the reliance element of common law fraud. First, defendant Ray Scott contends that be-

cause plaintiff admitted in a deposition that he joined B.A.S.S. just to get a good deal on *Bassmaster Magazine,* plaintiff is subject to a "unique defense" concerning whether he relied on defendants' alleged misrepresentations. (Doc. 156, p. 13) (citing *Edgington v. R.G. Dickinson and Co.,* 139 F.R.D. 183, 194 (D.Kan.1991)). The other defendants take a different angle, arguing that the reliance element raises "individual issues":

> The need for individual treatment of fraud claims is particularly evident where, as here, Murray apparently intends to rely upon voluminous written material in which alleged misrepresentations purportedly were made. To contend, as Murray apparently does, that each putative class member may be assumed to have received, read, and relied on selected portions of this material is patently absurd. What facts each B.A.S.S. member knew, when he or she learned those facts, and how he or she acted in reliance on that knowledge would be critical issues in the class action Murray seeks to maintain. The answers to these questions of course would vary from class member to class member, and just as certainly would require precisely the sort of particularized proof that renders class action treatment inappropriate.

(Doc. 157, p. 11) (citing *McHan v. Grandbouche,* 99 F.R.D. 260, 266–67 (D.Kan.1983)). For three reasons, the court rejects these arguments.

First, both *Edgington* and *McHan,* the two cases relied on by the defendants, involved Rule 23(b)(3) class actions. In both cases, the courts were considering whether the reliance element in the plaintiffs' fraud claims involved "unique defenses" or "individualized issues" that precluded a finding of *predominating* common questions of law and fact under Rule 23(b)(3). This is not a Rule 23(b)(3) class action and common questions of law and fact need not predominate in order for it to proceed.

Second, even if plaintiff's case was a Rule 23(b)(3) class action requiring predominating common questions of law and fact, the court still believes the reliance question would not raise an "individual issue" sufficient to preclude a class action. There are a number of cases in which courts have dealt with arguments concerning the reliance element and Rule 23(b)(3)'s class action requirements. Many involve Rule 10b–5 securities fraud claims, in which reliance is always an element. *See, e.g., In re American Continental/Lincoln S & L Sec. Litig.,* 140 F.R.D. 425, 430–31 (D.Ariz.1992); *Edgington,* 139 F.R.D. at 190–95; *Longden v. Sunderman,* 123 F.R.D. 547, 553–55 (N.D.Tex.1988). Others involve common law fraud. *See, e.g., Smith v. MCI Telecommunications Corp.,* 124 F.R.D. 665, 678–79 (D.Kan.1989); *McHan,* 99 F.R.D. 260. In both types of cases, the courts have focused on the nature of the representations made in determining whether a class action was appropriate.

Where the representations were mostly written and sufficiently uniform, as opposed to oral and/or varied, most courts appear to have found that individual issues are at a minimum and that common questions predominate. For example, in *Smith v. MCI Telecommunications Corp., supra,* a class of employees made fraud claims against their employer for misrepresentations concerning employee compensation plans, and the employer argued that, as to the misrepresentation and reliance elements, individual issues predominated. Judge O'Connor disagreed. He found that because "the basic misrepresentations giving rise to the fraud claim [were] uniform ... and written" and "reliance [was] demonstrated simply by [the employees'] employment with MCI," common issues of law and fact predominated over individual ones. 124 F.R.D. at 678–79. Judge O'Connor distinguished *McHan* as "'dealing primarily with oral representations.'" *Id.* at 678 (quoting *McHan,* 99 F.R.D. at 266). *See also Connett v. Justus Enters. of Kansas, Inc.,* No. CIV.A. 87–1739–T, 1991 WL 13076, at *9–10 (D.Kan. Jan. 24, 1991) (Theis, J.) (finding typicality and adequacy of representation where plaintiff possessed same interest as other class members and the claims were based on alleged misrepresentations and omissions contained in a finite number of written documents).

The present case appears to be somewhat similar to *Smith.* For the most part, plaintiff's fraud claims involve *written* misrepre-

sentations and/or omissions [11] concerning the nature of B.A.S.S. as an organization. In the sense that these misrepresentations and/or omissions deal with the same matter—the status of B.A.S.S. as a corporation and/or unincorporated association—they are *uniform*. Finally, drawing from *Smith*, reliance could arguably be demonstrated by showing that the misrepresented and/or omitted information would have been material to the members in deciding whether to join B.A.S.S.

Third, in the court's view, it would be senseless to require each of the members of B.A.S.S., numbering over half a million, to individually assert their fraud claims against the defendants, especially where a single "underlying scheme," rather than a variety of distinct misrepresentations, is the fundamental basis for those claims. *In re American Continental/Lincoln S & L Sec. Litig.*, 140 F.R.D. at 431 ("It is the underlying scheme which demands attention. Each plaintiff is similarly situated with respect to it, and it would be folly to force each bond purchaser to prove the nucleus of the alleged fraud again and again.").

### C. *Plaintiff's ability to protect the class*

Defendants contend that plaintiff appears unable to protect B.A.S.S. and its members' interests adequately because he did not "originate" his claim and "has never taken time to conduct an independent investigation of the claims he asserts." (Doc. 156, p. 12). According to defendants, plaintiff brings this action only because of what his lawyer told him and "cannot be expected to discharge duties owed to the putative class if he lacks the knowledge necessary to determine if their claims are being effectively prosecuted." *Id.* This simply echoes defendants' constant cries that plaintiff is being duped by

his attorneys and others with personal vendettas against Ray Scott.

In the court's view, it is completely irrelevant to the adequate representation issue where and how plaintiff obtained the information leading him to file this action against the defendants. To hold otherwise, assuming the validity of plaintiff's claims, would be to award defendants for their sophistication in carrying out their fraud and/or to penalize plaintiff for simply being gullible. The Supreme Court has rejected such notions. *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966) (holding shareholder's derivative action alleging fraud is not subject to dismissal simply because shareholder relied on explanations of her son-in-law, a professional investment advisor, was "uneducated generally and illiterate in economic matters," and did not herself understand complaint).

Plaintiff himself may not understand the legal intricacies of this action.[12] He may not even be able to explain exactly how he and the other members of B.A.S.S. have allegedly been defrauded. However, that does not mean plaintiff's claims are meritless or that he will not adequately represent and protect the interests of B.A.S.S. and its members in prosecuting those claims. *See Connett, supra*, 1991 WL 13076, at *10 (finding adequacy of representation despite defendants' contention that plaintiff relied on counsel and "lacked the necessary independent judgment and personal factual information to prosecute [the] case"); *see also* discussion *infra*, Section V(B), regarding adequate representation and protection.

### III. *Is There Federal Subject–Matter Jurisdiction?*

This action is brought in federal court on diversity grounds.[13] 28 U.S.C. § 1332(a)

---

11. It is significant that plaintiff's claims focus primarily upon what the defendants *omitted*, not what they actually represented. Fraudulent omission of material information often raises a presumption of reliance, *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972), and, depending on the applicable state law, such a presumption may arise in the present case.

12. Indeed, given the number of times his lawyers have had to go back to the drawing board, it is highly probable that plaintiff has no understanding whatsoever of the legal aspects of this action.

13. As stated *supra*, the federal RICO claim plaintiff had proposed to bring is not included in his proposed fourth amended complaint. Only state law claims are plead. Hence, diversity is the only basis for federal subject-matter jurisdiction.

provides, in relevant part, that "[federal] district courts ... have original jurisdiction of all civil actions where the matter in controversy *exceeds the sum or value of $50,000,* exclusive of interest and costs, and is *between ... citizens of different states....*" (emphasis added). The parties dispute both whether the amount in controversy "exceeds the sum or value of $50,000" and whether this action is "between citizens of different states."

### A. Does the amount in controversy exceed $50,000?

■ In cases involving multiple plaintiffs, including class actions, the Supreme Court has interpreted 28 U.S.C. § 1332's "matter in controversy" language as requiring *each* plaintiff to independently allege claims that meet the amount in controversy requirement. *Zahn v. International Paper Co.,* 414 U.S. 291, 294–95, 94 S.Ct. 505, 508–09, 38 L.Ed.2d 511 (1973); *Snyder v. Harris,* 394 U.S. 332, 336–37, 89 S.Ct. 1053, 1057, 22 L.Ed.2d 319 (1969). In this particular case, it is highly unlikely that any individual B.A.S.S. member has a claim potentially in excess of $50,000. There is, however, an exception to the rule from *Zahn* allowing class action plaintiffs to *aggregate* their claims in order to meet the amount in controversy requirement: " '[W]hen several plaintiffs unite to enforce a single title or right, in which they have a common and undivided interest, it is enough if their interests collectively equal the jurisdictional amount.' " *Zahn,* 414 U.S. at 294, 94 S.Ct. at 508 (quoting *Troy Bank of Troy, Indiana v. G.A. Whitehead & Co.,* 222 U.S. 39, 40–41, 32 S.Ct. 9, 9, 56 L.Ed. 81 (1911)).

In the court's view, the aggregation exception applies in the present case. As discussed *supra,* each B.A.S.S. member is a tenant in common with respect to B.A.S.S. property, and each holds a joint, common and undivided interest in said property. In this lawsuit, they seek to collectively enforce those common and undivided interests.

*Zahn,* 414 U.S. at 294, 94 S.Ct. at 508. Hence, rather than being a "congeries of separate suits," this is essentially one suit and aggregation is proper. *Id.* at 296, 94 S.Ct. at 509. *See Gibbs v. Buck,* 307 U.S. 66, 68–76, 59 S.Ct. 725, 727–31, 83 L.Ed. 1111 (1939) (holding, in class action by members of unincorporated association, that members' claims could be aggregated because "[t]hey have a common and undivided interest in the matter in controversy in this class suit").

### B. Is there diversity of citizenship?

■ The Supreme Court established long ago that diversity of citizenship in a class action is determined by the citizenship of the named representatives of the class rather than the citizenship of every class member. *Supreme Tribe of Ben–Hur v. Cauble,* 255 U.S. 356, 364–66, 41 S.Ct. 338, 341–42, 65 L.Ed. 673 (1921) (holding, in class action by members of unincorporated association, that diversity jurisdiction is not defeated simply because some of the non-representative members of the class are citizens of the same state as defendant). Hence, in this class action, even though some 17,000 members of B.A.S.S. are citizens of Alabama, complete diversity of citizenship does exist because plaintiff, the named representative, is a citizen of Kansas and all of the defendants are citizens of Alabama.

### IV. Is There Personal Jurisdiction?

In both its January 27 and June 21, 1993 orders, the court expressed reservations as to whether it could exercise personal jurisdiction over Sevier, Dabbs, Davis, and Jemison Investments.[14] These potential defendants, alleged owners of interests in B.A.S.S., Inc., maintain that their only connections with Kansas involved activities performed in their respective corporate capacities with B.A.S.S., Inc. and that, under the "fiduciary shield doctrine," such activities cannot be used to provide a basis for personal jurisdiction over them as individuals.[15] In response, plaintiff

---

14. The question of this court's personal jurisdiction over defendants B.A.S.S., Inc. and Ray Scott seems clear. No claim is made that this court lacks personal jurisdiction over B.A.S.S., Inc., (Doc. 157, pp. 12–16), and Scott's lack of juris-

diction claim appears to be insubstantial, (Doc. 156, p. 14).

15. Actually, Jemison Investments claims that it has no ownership interest in B.A.S.S., Inc. and

contends that Sevier, Dabbs, Davis, and Jemison Investments have used B.A.S.S., Inc. as a fraudulent instrumentality and their "fiduciary shield" can therefore be pierced. Plaintiff argues that he is "entitled to discovery in order to make his case that this Court does have personal jurisdiction over all these defendants." (Doc. 159, p. 15).

**■** Under the fiduciary shield doctrine invoked by defendants, "[a]n individual's actions, taken in his capacity as a corporate officer, do not create personal jurisdiction over that individual even though the state may have personal jurisdiction over the corporations." *Executive Aircraft Consulting, Inc. v. Towers Fin. Corp.*, No. CIV.A. 91–1357–B, 1992 WL 402032, at *2 (D.Kan. Dec. 1, 1992).

> Where the acts of individual principals of a corporation in the jurisdiction were carried out solely in the individuals' corporate or representative capacity, the corporate structure will ordinarily insulate the individuals from the court's jurisdiction.

*Ten Mile Indus. Park v. Western Plains Serv. Corp.*, 810 F.2d 1518, 1527 (10th Cir. 1987). "However, there are circumstances under which nonresident individuals can be subjected to long-arm jurisdiction because of the individual's role with respect to a corporation," including "use of the corporate entity in promoting injustice or fraud." *Stucky v. Health Care Products, Inc.*, No. CIV.A. 90–1562–B, 1992 WL 124832, at *2 (D.Kan. May 26, 1992). In *Stucky*, for example, this judge held individual corporate officials were subject to personal jurisdiction in Kansas because they had directed the production, sale, and distribution of quack diet pills to a Kansas resident, causing her injury, and the corporate entity was "obviously intended merely as a facade for the operations of the individual defendants and [was] being used to facilitate fraud." *Id.* at *3.

Plaintiff directs the court to *Traffas v. Bridge Capital Corp.*, No. CIV.A. 90–1304–C, 1990 WL 251740, at *3–9 (1990) in which Judge Crow held that certain nonresident corporate officials were subject to personal jurisdiction in Kansas even though their contacts with Kansas were the result of representative activities. The corporate officials in *Traffas* were accused of wrongdoing (intentional interference with plaintiff's contractual relations, fraudulent representation of plaintiff's job security, and defamation of plaintiff) that was particularly personal in nature and "intentionally directed" at plaintiff in Kansas. *Id.* at *8.

Having reviewed this authority, the court believes additional discovery is necessary before a definitive ruling on personal jurisdiction in Kansas can be made. The court's doubts concerning personal jurisdiction over Sevier, Dabbs, Davis, and Jemison Investments remain. Mindful of these lingering doubts, the court turns to the issue of whether this case should be transferred to the United States District Court for the Middle District of Alabama, where personal jurisdiction over all the defendants is clearly present.

**V. Should This Case Be Transferred to Alabama?**

Defendants have requested a discretionary transfer pursuant to 28 U.S.C. § 1404(a), which provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Two issues have arisen regarding transfer under 28 U.S.C. § 1404(a). First, there is the threshold matter of whether this case could have originally been brought in Alabama federal court. Second, there is the question of whether the factors relevant to a transfer request weigh strongly in favor of transfer.

**A. Could this action have originally been brought in Alabama federal court?**

Plaintiff contends that this case cannot be transferred to the Middle District of Alabama because it could not have originally

---

therefore should not be a party to this action. Alternatively, Jemison Investments contends that even if it had an interest in B.A.S.S., Inc., personal jurisdiction would be lacking because of the fiduciary shield doctrine.

been brought there. According to plaintiff, because Ala.Code § 6–7–80 permits suits by an association in its own name, an Alabama federal court would find that this case should have been brought in the name of the unincorporated association and, therefore, the residence of each B.A.S.S. member, including the estimated 17,127 B.A.S.S. members residing in Alabama, would be considered in determining diversity of citizenship. (Doc. 159, pp. 11–13). Plaintiff states:

> "Had this action been brought in the federal court in Montgomery, Alabama, the federal court would have looked to Alabama state law (F.R.C.P. 17[b]). At that point, the Alabama federal court would have determined that, pursuant to § 6–7–80, plaintiff *should have* filed a suit in the name of the unincorporated association: 'Bass Anglers Sportsman Society.' Had that determination been made, legal capacity would have been accorded to 'B.A.S.S.' and ... complete diversity would have been destroyed...."

(emphasis added).

When an unincorporated association itself is a *named* party in any action, class or otherwise, its citizenship is that of all of its members. *United Steelworkers of America v. Bouligny, Inc.,* 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965). In the case of large nation-wide associations, such as B.A.S.S., this effectively eliminates any possibility of federal jurisdiction in a state law case. However, as discussed *supra,* when the members of an unincorporated association bring a class action under Rule 23.2 (diverse members only being named as representatives) rather than an action by the unincorporated association itself, only the named representatives' citizenship is considered, preserving diversity jurisdiction. *Supreme Tribe of Ben–Hur v. Cauble,* 255 U.S. 356, 365–66, 41 S.Ct. 338, 341–42, 65 L.Ed. 673 (1921). Hence, the class action is a strategic mechanism whereby federal subject-matter jurisdiction can be obtained even though some of the members of an unincorporated association are nondiverse.

> For purposes of diversity jurisdiction, an unincorporated association is said to have no citizenship of its own. Thus, if suit is brought by or against an association as an entity or by or against its individual members, the organization's citizenship is deemed to be the same as that of its members. This effectively may bar resort to federal diversity jurisdiction because the requirement of complete diversity is virtually impossible to satisfy in cases involving large multistate associations. In sharp contrast, the approach utilized when the association sues or is sued in a class action is that the citizenship of the class is considered to be that of the named representatives; the representatives usually can be chosen to insure complete diversity.

7C Wright & Miller § 1861, at 217–18 (1986). *See also* Walter W. Jones, Annotation, *Determination of Citizenship of Unincorporated Associations, for Federal Diversity of Citizenship Purposes, in Actions By or Against Such Associations,* 14 A.L.R.Fed. 849, at § 2[b] (1973).

A dispute has arisen among the courts as to whether the class action option, creating diversity where there would otherwise be none, is available when the relevant state law, made applicable by Rule 17(b), authorizes suits by the unincorporated association itself. Chief Judge Kelly recently reviewed this dispute, without taking a position of his own:

> Rule 23.2 permits an action to be brought [by or] against an unincorporated association by naming certain members of the association as representative parties. The Advisory Committee Note to the rule states that the purpose of Rule 23.2 is to "give 'entity treatment' to the association when for formal reasons it cannot sue or be sued as a jural Person under Rule 17(b)." (Emphasis added.) Under Rule 17(b) the jural capacity of an unincorporated association is determined by local state law.

> Some courts, following the language contained in the Advisory Committee Note, have held that Rule 23.2 provides for class actions only in the event that state law prohibits a suit [by or] against the entity itself. If state law permits an action against the association, a class action may not be brought against the members of the

association. *Northbrook Excess & Surplus Ins. v. Medical Malpractice Joint Underwriting Ass'n*, 900 F.2d 476, 478–79 (1st Cir.1990); *Patrician Towers Owners v. Fairchild*, 513 F.2d 216, 220 (4th Cir.1975); *Peerless Ins. v. Aetna Cas. & Sur.*, 735 F.Supp. 452, 455 (D.N.H.1990); *National Bank of Washington v. Mallery*, 669 F.Supp. 22, 25 (D.D.C.1987); *Lang v. Windsor Mount Joy Mut. Ins. Co.*, 493 F.Supp. 97 (E.D.Pa.1980); *Gay Liberation v. University of Missouri*, 416 F.Supp. 1350 (W.D.Mo.1976), *rev'd on other gds.*, 558 F.2d 848 (8th Cir.1977); *Lee v. Navarro Savings Ass'n*, 416 F.Supp. 1186 (N.D.Tex.1976), *rev'd on other gds.*, 597 F.2d 421 (5th Cir.1979), *aff'd*, 446 U.S. 458 [100 S.Ct. 1779, 64 L.Ed.2d 425] (1980); *Suchem, Inc. v. Central Aguirre Sugar*, 52 F.R.D. 348 (D.P.R.1971).

Other courts have concluded that Rule 23.2 serves as a supplementary device which provides an additional means of proceeding against an unincorporated association, whether or not state law provides for an action against the entity itself. *See Curley v. Brignoli, Curley & Roberts Assoc's.*, 915 F.2d 81, 87 (2d Cir.1990), *cert. denied*, 499 U.S. 955 [111 S.Ct. 1430, 113 L.Ed.2d 484] (1991); *Kerney v. Fort Griffin Fandangle Ass'n*, 624 F.2d 717, 719–20 (5th Cir.1980); *Lumbermen's Underwriting Alliance v. Mobil Oil*, 612 F.Supp. 1166, 1171 (D.Id.1985), *app. dismissed*, 835 F.2d 1435 (9th Cir.1987); *Tisa v. Potofsky*, 90 F.Supp. 175 (S.D.N.Y.1950). One commentator has concluded that the better rule supports the use of Rule 23.2 class actions as a supplementary device, but recognizing a clear trend in cases addressing Rule 23.2 to restrict its application in cases where state law prohibits actions against the associative entity. 7C Wright, Miller, & Kane, *Federal Practice & Procedure*, Civil 2d, § 1861, 222–223 (1986). *Taylor v. Bywater*, No. CIV.A. 93–1453–PFK, 1994 WL 114293, at *2 (D.Kan. March 29, 1994). As this passage shows, neither the Tenth Circuit, whose decisions bind this court, nor the Eleventh Circuit, whose decisions bind the United States District Court for the Middle District of Alabama, have spoken on the issue. However, during the time that Alabama was part of the Fifth Circuit (before the Eleventh Circuit was created), the Fifth Circuit decided two cases that are pertinent here.

First, prior to the adoption of Rule 23.2, in *Calagaz v. Calhoon*, 309 F.2d 248 (5th Cir. 1962), the Fifth Circuit was asked to consider what effect Ala.Code § 6–7–80 and Rule 17(b) had on the availability of Rule 23 class actions. *Calagaz* involved a sort of double class action by and against unincorporated associations. The plaintiff filed a class action under Rule 23, on behalf of himself and all the other members of a local unincorporated association, and sued, as a class under Rule 23, all of the members of a national unincorporated association. Federal jurisdiction was asserted on the ground of diversity of citizenship, the named representative of the national unincorporated association (its Executive Vice President) being a diverse party. *Id.* at 251. The district court dismissed the complaint for lack of diversity. Presumably, the court found that under Rule 17(b) and Ala.Code § 6–7–80 the national association itself should have been a party. *Id.*

The Fifth Circuit reversed, holding that Rule 17(b) is "no obstacle" to class actions predicated on diversity jurisdiction. *Id.* at 252. The court, quoting from one of its previous opinions, clearly indicated that it viewed the class action as a valuable mechanism enabling the members of an unincorporated association to sue in federal court even though some of them are nondiverse:

> "[T]here is nothing in rule 17(b) which limits the right to bring a class suit under rule 23(a) in proper cases. Rule 17(b) relates to capacity to sue or be sued.... There is nothing in [it] that limits the right to bring the unincorporated association into court by means of a class suit in accordance with the prior practice; and the right to bring such class suit continues to be of great value when the right to sue the association in its common name is, for any reason, unavailable. Instances where it is not available are **cases where jurisdiction based on diversity would be defeated by a suit by or against the association but not by a suit by or against representatives** or where, as here, it is not

possible for the plaintiff to serve process on the association within a convenient jurisdiction. * * * Together (Rule 17(b) and 23(a)) provide alternative methods of bringing unincorporated associations into court. *Tunstall v. Brotherhood of Locomotive Firemen and Enginemen,* 4 Cir., 1945, 148 F.2d 403, 405."

*Id.* at 252 (emphasis added) (quoting *Lowry v. International Brotherhood of Boilermakers,* 259 F.2d 568, 672–73 (5th Cir.1958)).[16]

Second, after the adoption of Rule 23.2, in *Kerney v. Fort Griffin Fandangle Ass'n, Inc.,* 624 F.2d 717 (5th Cir.1980), the Fifth Circuit considered whether a Rule 23.2 class action could be brought *against* the members of an unincorporated association in Texas federal court, diverse members being named as defendants, even though a Texas statute permitted entity suits against the association itself. The defendants argued, based on the Advisory Committee Note, that the association itself had to be sued and that Rule 23.2 could not be used by the plaintiffs to get into federal court. *Id.* at 719. The court rejected this argument, finding that "Rule 23.2 clearly authorize[d] a class action against the members of an unincorporated association in Texas." *Id.* at 720. In a footnote, the court recognized that Rule 23.2 had "created a new avenue for establishing diversity jurisdiction in suits by or against an [unincorporated] association." *Id.* at 720 n. 6. Strangely, however, the court added the following caveat: "We do not decide whether a party may maintain a class suit under rule 23.2 when the opposing party can establish that the plaintiff elected to bring a class action rather than an entity suit only in order to select diverse parties as named class representatives and thereby create [diversity] jurisdiction." *Id.* *Compare Northbrook, supra,* 900 F.2d at 478 (finding, based on Advisory Committee Note, that Rule 23.2 cannot be used merely to create diversity jurisdiction) *with Curley, supra,* 915 F.2d at 87 (expressly

disagreeing with *Northbrook*'s rationale) (discussion *infra*). This seemingly backtracked from *Calagaz,* where the court had clearly indicated that using the class action to create diversity in suits involving unincorporated associations was perfectly permissible and a valuable aspect of the class action mechanism!

■ Based on *Calagaz* and *Kerney,* this court is relatively certain that an Alabama federal court would find that plaintiff's class action could have originally been brought there on diversity grounds. To the extent that doubts are raised by the footnote in *Kerney,* this court agrees with the Second Circuit's reasoning in *Curley,* which echoes some of the reasoning in *Calagaz:*

We are aware that some courts have adopted the view that a class action under rule 23.2 may be brought only if the state in which the district court sits has denied the association the requisite capacity to be a party to the suit. *See, e.g., Northbrook Excess & Surplus Ins. Co. v. Medical Malpractice Joint Underwriting Ass'n of Mass.,* 900 F.2d 476, 478–79 (1st Cir.1990) (rule 23.2 does not authorize suit against members as a class where state law allows association to be sued as an entity); *Suchem, Inc. v. Central Aguirre Sugar Co.,* 52 F.R.D. 348, 355 (D.P.R.1971) (same); *see also Patrician Towers Owners, Inc. v. Fairchild,* 513 F.2d 216, 220–21 (4th Cir. 1975) (noting *Suchem's* restrictive interpretation of 23.2 but not reaching the issue); *Peerless Ins. Co. v. Aetna Casualty & Sur. Co.,* 735 F.Supp. 452, 455 (D.N.H. 1990) (following *Northbrook* as governing circuit precedent). This interpretation stems from the following advisory committee comment:

Although an action by or against representatives of the membership of an unincorporated association has often been viewed as a class action, the real or main purpose of this characterization has been

---

**16.** Significantly, the Alabama Supreme Court employed similar reasoning in finding that Ala. Code § 6–7–80 (actually, its precursor) does not preclude a class suit in state court: "There is no attempt in the statute to prevent such a suit. The statute simply provides for a less complicated procedure if the complainant so elects." *McNul-* *ty v. Higginbotham,* 252 Ala. 218, 221, 40 So.2d 414, 416 (1949). The court also stated, however, that when association funds are involved, as in the present case, the association itself must be made a party to the suit. *Id.* An Alabama federal court would not, of course, be bound by this judge-made Alabama state court procedural rule.

to give "entity treatment" to the association when for formal reasons it cannot sue or be sued as a jural person under Rule 17(b).

Fed.R.Civ.P. 23.2 advisory committee's note.

Rule 17(b) provides in relevant part:

[C]apacity to sue or be sued shall be determined by the law of the state in which the district court is held, except (1) that a partnership or other unincorporated association, which has no such capacity by the law of such state, may sue or be sued in its common name for the purpose of enforcing for or against it a substantive right under the Constitution or laws of the United States....

Fed.R.Civ.P. 17(b). *Northbrook* reads the committee note as an instruction that the sole purpose of rule 23.2 is to provide capacity where none exists under state law. Under this reasoning, rule 23.2 is unavailable to limited partners in a federal district court sitting in New York because the partnership has capacity as an entity under state law. *See* N.Y.Civ.Prac.L. & R. 1025 (McKinney 1976).

We disagree with this restrictive interpretation. It must be remembered that the class action mechanism provides litigants with important procedural advantages. For example, class status may expand the number of districts where venue is proper, *see Appleton Elec. Co. v. Advance–United Expressways,* 494 F.2d 126, 139–40 (7th Cir.1974); may permit a party to litigate the rights of class members not within the court's personal jurisdiction, see *Calagaz v. Calhoon,* 309 F.2d 248, 253–54 (5th Cir.1962); or **may allow a plaintiff to name as representatives only those association members whose citizenship will not disturb diversity jurisdiction,** see *Supreme Tribe of Ben–Hur v. Cauble,* 255 U.S. 356, 365–66, 41 S.Ct. 338, 341–42, 65 L.Ed. 673 (1921). If the drafters of rule 23.2 intended to provide only a vehicle for capacity, it seems that they would have simply extended to the diversity realm rule 17(b)'s grant of association capacity in federal question cases.

Further, even if the drafters felt compelled to grant capacity in an indirect manner, perhaps to avoid Erie problems in circumventing state capacity limitations, a restrictive interpretation of rule 23.2 does not follow. The more reasonable interpretation is that the drafters, having found it necessary to grant advantageous procedures in states which restrict association capacity, would make those procedures available in all district courts. If they intended the anomaly that the availability of class actions would turn on state capacity laws, the drafters could have so provided in the text of rule 23.2. Accordingly, we agree with those courts that have refused to impose such an interpretation upon the advisory committee note. *See, e.g., Kerney v. Fort Griffin Fandangle Ass'n, Inc.,* 624 F.2d 717, 719–20 (5th Cir. 1980); *Lefebvre v. Kelly,* No. 83 CV 3211 (ERK), slip op. at 6–7, 1987 WL 12036 (E.D.N.Y. May 21, 1987); *Lumberman's Underwriting Alliance v. Mobil Oil Corp.,* 612 F.Supp. 1166, 1170 (D.Idaho 1985); *see also* 7C C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure s 1861, at 223 (2d ed. 1986) (reading advisory committee note to support "the view that Rule 23.2 is a procedural device that provides a supplementary method for unincorporated associations to litigate in a federal court") (citing *Lumberman's Underwriting Alliance*).

We conclude that plaintiffs could have brought a rule 23.2 class action, rather than a derivative suit....

915 F.2d at 86–87 (emphasis added).

B. *Do the relevant factors strongly favor transfer?*

 Generally, transfer is appropriate under § 1404(a) only when consideration of all relevant factors strikes a balance that strongly favors the defendant. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947); *Allstate Ins. Co. v. Employers Reinsurance Corp.,* 715 F.Supp. 1502 (D.Kan.1989); *Dow Chem. Corp. v. Weevil–Cide Co.,* 630 F.Supp. 125, 130 (D.Kan.1986); *Grimandi v. Beech Aircraft Corp.,* 512 F.Supp. 764, 777 (D.Kan. 1981).

Among the factors [a district court] should consider is the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Chrysler Credit Corp. v. Country Chrysler, Inc.,* 928 F.2d 1509, 1516 (10th Cir.1991) (quoting *Texas Gulf Sulphur Co. v. Ritter,* 371 F.2d 145, 147 (10th Cir.1967)). Each case must be decided "according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 2244, 101 L.Ed.2d 22 (1988) (quoting *Van Dusen v. Barrack,* 376 U.S. 612, 622, 84 S.Ct. 805, 812, 11 L.Ed.2d 945 (1964)).

In *Studdard v. Connaught Lab., Inc.,* 793 F.Supp. 291 (D.Kan.1992), this court applied the relevant factors from *Chrysler Credit Corp., supra,* and granted the defendants' motion to transfer to the Eastern District of Missouri because the plaintiff was not a resident of Kansas, there were no fact witnesses from Kansas, the alleged tort and injury occurred in Missouri, and Missouri law governed. The *only* factor weighing in favor of plaintiff's choice of forum was its convenience to plaintiff's attorney, a factor "entitled to little, if any, weight." [17] *Id.* at 292.

■ In this case, as in *Studdard,* the relevant factors strongly favor transfer.

First, although plaintiff is a resident of Kansas, the vast majority of the class members are not. In fact, there are at least twice as many B.A.S.S. members in Alabama as there are in Kansas.

Second, the most important fact witnesses in this case—those with first-hand knowledge of the inner workings of B.A.S.S. and B.A.S.S., Inc.—reside in Alabama. Many witnesses appear to be beyond this court's compulsory process powers. In addition, substantial expenses and loss of valuable time would be incurred in having those witnesses travel to Wichita.

Third, to the extent this case ultimately turns on the application of Alabama substantive law, it would be preferable for an Alabama federal court to adjudicate this case, especially in light of the complexities this court has already encountered in attempting to ascertain and apply Alabama law with respect to unincorporated associations.

Fourth, most of the relevant occurrences at issue in this case took place in Alabama, most notably, the founding of B.A.S.S., the incorporation of B.A.S.S., Inc., the creation, publishing, and collection of advertising revenues of *Bassmaster Magazine,* the devising and transmission of B.A.S.S. membership solicitations, and the sale of B.A.S.S., Inc. by Ray Scott to the other defendants.

Fifth, the injuries for which the class members' seek recompense in this case occurred in every state and in several foreign countries. There is no particular connection to Kansas.

Sixth, as discussed *supra,* some of the defendants may not be subject to personal jurisdiction in Kansas. All of the defendants, however, are citizens of Alabama and subject to personal jurisdiction there.

Finally, in the event plaintiff obtains a judgment, it will be easier and more expeditious to enforce it in Alabama where B.A.S.S. and B.A.S.S., Inc. are headquartered.

In an affidavit, plaintiff has expressed uncertainty about his ability to adequately represent the other members of B.A.S.S. if this case is transferred to Alabama. (Doc. 37, Ex. 4). Plaintiff believes work commitments would prevent him from travelling to Alabama to attend court there.

---

**17.** Interestingly, the plaintiff's attorney in *Studdard* was a member of the same Wichita firm as plaintiff's attorney in the present case.

The adequate representation requirement, as stated *supra*, involves questions of whether plaintiff's counsel are qualified, experienced and generally able to conduct the proposed litigation and whether plaintiff has interests antagonistic to those of the rest of the class. *Griffin v. Carlin*, 755 F.2d 1516, 1533 (11th Cir.1985); *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir.1987), *cert. denied*, 485 U.S. 959, 108 S.Ct. 1220, 1221, 99 L.Ed.2d 421 (1988) (quoting *Griffin*). Plaintiff's affidavit does not touch on those issues; it focuses instead on his ability to personally participate in the trial and other events should they take place in Alabama.

■ Adequate protection of the class interests does not require any particular degree of participation by the representative in the litigation. Where counsel is competent and zealous, class certification should not be denied merely because of a perceived lack of subjective interest on the part of the named plaintiff unless his participation is so minimal that he has virtually abdicated to his attorneys the conduct of the case. *Kirkpatrick*, 827 F.2d at 727–28 (recognizing that "the subjective desire to vigorously prosecute a class action ... quite often is supplied more by counsel than by the class members themselves" because "counsel have a greater financial incentive for obtaining a successful resolution of a class suit than do the individual members"); *Simon v. World Omni Leas-*

*ing, Inc.*, 146 F.R.D. 197, 201 (S.D.Ala.1992) (quoting *Kirkpatrick*). Plaintiff's deposition testimony, (Doc. 84, Ex. 2), belies any suggestion that plaintiff has abdicated or intends to abdicate to his counsel.

Finally, it seems appropriate to consider how plaintiff's involvement as a class representative would differ if this case remained venued in Kansas. As just pointed out, most, if not all, of the conduct alleged in the complaint occurred in Alabama. Presumably, most, if not all, of the records subject to discovery are in Alabama. The defendants and many witnesses are in Alabama. In other words, most of the discovery will take place in Alabama. It is thus reasonable to assume that plaintiff would personally participate in little, if any, of the discovery, even if the case remained in Kansas federal court. Should the case ultimately go to trial in Alabama, it is reasonable to assume that plaintiff will have to be present, but this is a civil case and it is not uncommon for parties to be excused from attendance at the entire trial. It seems just as unlikely that plaintiff would be willing to sit through a long trial in Kansas.

Under all these circumstances, the court finds that plaintiff's proffered reason of hardship in the event of a transfer is insubstantial and insufficient to counterbalance the other reasons justifying transfer to Alabama.[18]

---

**18.** In a prior brief, plaintiff's counsel argue that transfer to Alabama is inappropriate because it is a "political 'nirvana' to these defendants." (Doc. 36, p. 51 n. 40 & pp. 74–75). According to counsel, Ray Scott is worshipped by the "brainwashed" citizenry of Montgomery and is so powerful and influential that "try[ing] this case before a Montgomery, Alabama jury would be like trying to persuade a New York City jury that George Steinbrenner really didn't own the Yankees." Plaintiff's counsel also claim that Scott, a former Republican party chairman in Alabama and an acquaintance of President Bush, "helped put a president in the White House ... [and] probably put a judge or two on the bench in Alabama."

These scandalous remarks, suggesting that an Alabama federal judge would be politically or personally motivated to favor defendants because of defendants' supposed influence in Alabama, are outrageous and offensive. The judicial system of this country is founded upon the precept that all persons stand equal before the law. The

books are full of cases in which mere citizens have prevailed against large corporations or governmental entities which possessed power, influence and resources far greater than any possessed by defendants in the present case. Ironically, members of plaintiff's law firm have been and are involved in such cases, which presumably is one of the reasons that Messrs. Cabell and Weeks apparently sought out and recruited plaintiff's lawyers.

Given plaintiff's lawyers' proven ability to effectively represent their clients against daunting opponents, the undersigned remains at a loss to understand the unnecessary sarcasm, vitriol and hyperbole which have permeated the pleadings and memoranda filed on plaintiff's behalf. (*See*, *e.g.*, Doc. 159, pp. 3–4; Doc. 158, pp. 2–3, 12–13; Doc. 109, p. 6; Doc. 74, pp. 1–2, 8–9; Doc. 35, pp. 20, 22–24, 55–57, 74–76). The court senses that Messrs. Cabell and Weeks, in their thirst for publicity and recognition, may be the true authors of, or at least undisclosed contributors to, many of the offensive statements. But regardless of the identity of the author or his (or their)

### VI. Should the Court Strike Certain Scandalous Matter From Plaintiff's Fourth Amended Complaint?

██ Defendants contend that plaintiff's fourth amended complaint contains redundant, immaterial, impertinent and scandalous matter. Specifically, defendants take issue with accusations that defendant Scott and his counsel "bought off" two law professors who, according to an article in the March 15, 1992 edition of *The Macon [Georgia] Telegraph*, previously gave opinions favoring plaintiff's side of this case. The newspaper article was written by Beau Cabell, who along with his friend, attorney Paul Weeks, apparently intends to write some sort of expose about B.A.S.S. and Ray Scott. Regrettably, it appears that this lawsuit may be a vehicle to gain additional materials for that expose.

In plaintiff's proposed fourth amended complaint, ¶¶ 147–60, plaintiff claims that Scott and his attorneys knew that the two professors, William Gregory of Georgia State University and James Weeks of Syracuse University, were potential witnesses in this case and, in order to continue to conceal defendants' fraud, gave the professors "hush money." Affidavits from Professors Gregory and Weeks indicate that they never established an attorney-client relationship with Beau Cabell or plaintiff and that they have legitimately been hired as expert consultants by defendant Scott and his attorneys.

The court will order that paragraphs 147–160 of plaintiff's proposed fourth amended complaint be stricken before the complaint can be filed. The court places no value on the report in *The Macon Telegraph* and cares little about what Professors Gregory and Weeks have to say about the merits, if any, of plaintiff's or defendants' positions. If defendant Scott and his attorneys believe that Professors Gregory and Weeks can help them prepare their side of the case, then so

be it. The allegations regarding Gregory and Weeks and their participation in the preparation of Scott's case are entirely collateral and immaterial to the underlying claims.

**IT IS ACCORDINGLY ORDERED** that plaintiff's Amended Motion for Leave to File a Fourth Amended Complaint (Doc. 155) is hereby granted. However, plaintiff's proposed fourth amended complaint must be altered to plead a Rule 23.2 class action and paragraphs 147–160 must be stricken before that complaint can be filed.

**IT IS FURTHER ORDERED** that this case be transferred to the United States District Court for the Middle District of Alabama. The Clerk shall defer the transfer of the file of this case for 10 work days, thus allowing plaintiff the opportunity to challenge the transfer ruling. In the event plaintiff challenges the transfer, the Clerk shall not effect transfer until the court has ruled on that challenge. Any objection to the transfer may be combined with a motion for reconsideration, but any such motion (or combination of motions), including any motion by defendants, and responses thereto shall not exceed 10 pages, including attachments of every kind. No reply memoranda will be permitted.

**IT IS SO ORDERED.**

motivations, the end result has not impressed this court and, if it is continued, undoubtedly will fail to impress the Alabama judge to whom this case will be assigned.

The court would be remiss if it failed to note that defendants' Georgia counsels' skirts are not much cleaner than plaintiff's counsels' with respect to inappropriate statements in the pleadings and conduct during discovery. Whether

defendants' counsel have merely "risen to the bait" or whether their behavior stands on its own, is immaterial. While it seems obvious that counsel do not respect one another and may have allowed personal involvement and personalities to gain the upper hand, this court expects (and is certain the Alabama federal court will expect) counsel to respect the judicial system and to alter their conduct accordingly.